IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE M. PERKEY,

      Plaintiff,

      vs.

ALBERT GALLATIN SCHOOL DISTRICT,
et al.,

      Defendants

Civil Action No:  2:23-cv-1326

## BRIEF IN SUPPORT OF MOTION TO DISMISS, PURSUANT TO RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

NOW COMES Defendants, Albert Gallatin School District ("the District") and Christopher Pegg ("Mr. Pegg") by and through their attorneys, Andrews & Price, LLC,, and file the following Brief in Support of Motion to Dismiss Plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), in support thereof averring as follows:

## I.    PROCEDURAL POSTURE / FACTUAL BACKGROUND

This action was commenced by Plaintiff, with the filing of a Complaint on July 24, 2023. (ECF No. 1).  As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant assumes Plaintiff's allegations to be true, and views all facts in the light most favorable to Plaintiff.[1]

Viewed according to these standards, the facts affecting Plaintiff's claims against the Defendant are construed as follows for purposes of resolving the Motion to Dismiss are as follows: Plaintiff's Complaint contains ten (10) counts - Count I – First Amendment Retaliation pursuant

---

[1] In accordance with the standard of review, the "facts" relevant to this Motion to Dismiss are taken from the Plaintiff's Complaint and the exhibits attached thereto. By no means does the District concur with this rendition of the facts other than for the purpose of resolving this motion.

to 42 U.S.C. § 1983 (all Defendants); Count II – Violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Defendants Craig P. Student and Trooper Jane Doe); Count III – Violation of Fourth Amendment/Violation of Pennsylvania Common Law Rights/Malicious Prosecution pursuant to 42 U.S.C. § 1983 (Albert Gallatin School District, Christopher Pegg, Trooper Craig P. Student and Trooper John Doe); Count IV – Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983/Reckless Investigation (Trooper Craig P. Student and Trooper John Doe); Count V – Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983/Unlawful Search and Seizure (Trooper Craig P. Student and Trooper John Doe); Count VI – State Law Claim Malicious Prosecution (Christopher Pegg, Trooper Craig P. Student, and Trooper John Doe); Count VII – State Law Claim Intentional Infliction of Emotional Distress (Christopher Pegg, Trooper Craig P. Student and Trooper John Doe); Count VIII – State Law Claim False Light / Slander (Christopher Pegg and Trooper Craig P. Student); Count IX – State Law Claim Abuse of Process (Christopher Pegg, Trooper Craig P. Student and Trooper John Doe); and Count X – State Law Claim False Arrest / False Imprisonment (Trooper Craig P. Student and Trooper John Doe).

The *ad damnum* clause of each count of Plaintiff's Complaint against the District and Mr. Pegg contains a claim for punitive damages and attorney's fees, in addition to other sought after relief.

Factual Averments in Complaint

Plaintiff was the parent of two minor students who were attending 8th and 9th grade in the District during the 2019-2020 school year. C ¶ 13-16. On or about March 13, 2020 the Albert Gallatin Area School District closed schools due to the COVID-19 pandemic and adopted a remote learning program, which involved the students using their District issued computer tablets with the requirement that they attend classes remotely from home. C ¶23-25. Student attendance in the

remote learning environment was monitored by the District. C ¶25. During the 2019-2020 and 2020-2021 school years, Plaintiff regularly posted comments critical of District policies related to the COVID-19 pandemic, including remote learning and masking on two Facebook pages that she believed to be controlled by the District—an "official" Albert Gallatin School District page and a "Parents" page. C ¶19-22.

During the pandemic, Plaintiff suffered economic hardship, which caused her to lose internet access. C ¶26. Having heard that other families had gotten assistance from the District in the form of "free internet service" Plaintiff requested the same for her children. C ¶27-28. Her request for "free internet service" was denied at some point during or prior to the 2020-2021 school year. C ¶31. Plaintiff declined to have her children attend school in-person during the 2020-2021 school year due to the mandatory masking requirement, despite her lack of reliable internet service. C ¶37-38.

During the school year 2020-2021 the children's teachers began to notify Plaintiff by e-mail that her children weren't completing their work as assigned remotely and that their grades were failing. C ¶32. Accordingly, Plaintiff intensified her criticisms of the District on the two Facebook pages referenced above and in emails to her children's teachers and posted videos in opposition to the Centers for Disease Control ("CDC")'s guidance on masking and social distancing. C ¶33-34, 40-41. At some point during the 2020-2021 school year Plaintiff was blocked from both above-referenced Facebook pages "simultaneously" and her messages to the pages went unanswered. C¶40-45. Plaintiff then left multiple harassing voicemail messages for the District, where she referred to the Albert Gallatin School District as a Communist organization, accompanied with threats to see to it that all employees would be required to forfeit their

employment. Throughout the multiple messages were multiple explicit phrases that were considered offensive and harassing in nature. C¶76; ECF No. 1-3 *4.

At some time on or prior to May 26, 2021, Mr. Pegg, the District Superintendent, notified the Pennsylvania State Police that Plaintiff's children were not attending school as required by law. Further, on May 26, 2021, Mr. Pegg reported Plaintiff's harassing voicemail messages to Trooper Craig Student of the Pennsylvania State Police. Trooper Student listened to Plaintiff's messages and decided to file a misdemeanor criminal charge of harassment against Plaintiff. C¶49, 76; ECF No. 1-3 *4. Finally, Trooper Student and Trooper Jane Doe went to Plaintiff's house on May 26, 2021 and placed her under arrest on charges of truancy. C¶50-56. On June 16, 2021, Plaintiff appeared before the local District Justice where the truancy/attendance officer appeared and dropped the truancy charges against the Plaintiff. C¶66.

On June 15, 2021, Plaintiff's children began attending summer school in-person, having failed the 2020-2021 school year. C¶67-68. On or about June 21, 2021, Plaintiff visited the Albert Gallatin High School to discuss her children's failure for the 2020-2021 school year. C¶93. During that time, Plaintiff argued with the High School Principal, Guidance Counselor and one of her children's teachers over her refusal to wear a mask and the District's failure to return her phone calls. C¶93-101. That same day, Mr. Pegg sent Plaintiff notice that, based on her inappropriate behavior, she was not permitted on District premises without a prescheduled appointment. See C¶74, ECF No. 1-2. Plaintiff ultimately withdrew her children from the District. C¶101.

Plaintiff appeared at a preliminary hearing on her previously referenced harassment charge on April 25, 2022, where the Court found that the Commonwealth had presented a prima facie case and held the case for Court. C¶78-79. On September 21, 2022 the Attorney for the Commonwealth filed a Motion for Leave to Enter a Nol. Pros. of the charges against the Plaintiff,

4

which was granted by the Court, based on the victim (Mr. Pegg and the District)'s desire not to proceed with the prosecution. C¶82-83; ECF No. 1-6.

## II.     LEGAL STANDARD FOR RULE 12(b)(6) MOTION TO DISMISS

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

To survive the motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth;

(3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Third Circuit requires a court to "permit a curative amendment" of a complaint, "unless an amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2002). Lastly, while courts generally do not consider affirmative defenses at the motion-to-dismiss stage of a case, they may be addressed when they appear on the face of the complaint. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

## III.   ARGUMENT

### A.  Plaintiffs' Claims Against the District and Mr. Pegg for Violation of the First Amendment and First Amendment Retaliation are Time Barred.

"With respect to §1983 actions, there is no federal statute of limitations. However, §1988 contains a borrowing provision under which this gap shall be filled by reference to "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil ... cause is held." 42 U.S.C.A. §1988. In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court determined after extensive discussion that all §1983 actions should be classified as claims for personal injury for the purpose of determining the limitations period under the applicable state law. *Garcia*, 471 U.S. at 272–76, 280, 105 S.Ct. at 1944–47, 1949. Based on its personal injury tort law, the statute of limitations for a § 1983 claim arising in Pennsylvania is two years. 42 Pa. Cons.Stat. § 5524(2); see also *Kost v. Kozakiewicz*, 1 F.3d 176, 189–90 (3d Cir.1993)(emphasis added).

Federal law governs a cause of action's accrual date. *Genty v. Resolution Trust Corp*., 937

F.2d 899, 919 (3d Cir.1991). Under federal law, a cause of action accrues, and the statute of limitations begins to run, "when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir.1998) (citation omitted); see also *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir.1998). The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known. *Barren v. United States*, 839 F.2d 987, 990 (3d Cir.1988). As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury. See *United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979). "The cause of action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *Wallace*, 549 U.S. at 391, 127 S.Ct. 1091 (internal quotation marks and citations omitted).

Plaintiff alleges that the District and Mr. Pegg took a number of actions against her in retaliation for her exercise of First Amendment protected conduct, specifically, (1) blocking Plaintiff from the school's Facebook Page; (2) blocking her from the Parent's Facebook Page; (3) providing notice to her that she had to schedule an appointment in advance before she could enter District property; (4) refusing to provide Internet connection to her children free of charge despite doing so for other students in the school district; and (5) Causing the arrest of the Plaintiff.   C ¶ 102 (a)-(e).

The Complaint does not state the date that the District denied Plaintiff's request to provide free internet access to her children. C ¶ 31. However, it is clear from the face of the Complaint that Plaintiff made the request early in the 2020-2021 school year, as she cites it as a reason for her

children's failing grades. C ¶32, 38-39. Per the Complaint, Plaintiff's children were required to attend summer school in-person beginning on June 15, 2021, as a result of failing the 2020-2021 school year. C ¶ 68. Accordingly, it is obvious that this alleged retaliatory action from the District could not have occurred after June 15, 2021, and that Plaintiff became aware of it prior to that date.

Similarly, the Complaint does not provide a date when Plaintiff was blocked from the District and Parent's Facebook pages. Per the Complaint, Plaintiff's children failed the 2020-2021 school year and "[a]t all relevant times relevant hereto, [she]…became vocal relative to the school closings and later the required masks expressing her feelings on social media especially on the school district's Facebook page and the Albert Gallatin School District's parents Facebook page." C ¶ 38-40. Plaintiff was then blocked from both Facebook pages "almost immediately" after making these posts. C ¶ 42-43. Further, the Complaint alleges that:

> "during this time after Plaintiff was blocked by the Defendant School District from expressing herself on the school district social media sites and was prohibited from entering the school property without permission, her only way to contact the school district was via telephone… the school district failed to answer her calls and/or return her calls, Plaintiff exercising her first amendment rights of the Constitution of the United States of America to free speech again became very critical of the staff of the school district at times calling them "communists" and threatening to "have their jobs."

C ¶ 75-76. Per the Complaint, Plaintiff made her harassing phone calls to the District on or before May 26, 2021, when it was reported to the Pennsylvania State Police. C ¶49, 76; ECF No. 1-3 *4. Accordingly, it is clear on the face of the Complaint that Plaintiff was blocked from these Facebook pages prior to May 26, 2021.

The Complaint does provide dates for the remaining alleged retaliatory conduct that Plaintiff alleges from the District. Plaintiff has pled that she was arrested by the Pennsylvania State Police at her home on May 26, 2021, based upon a report from the District. C ¶50. The Complaint does not allege that Plaintiff was arrested in connection with this matter on any other occasion, nor

does it allege that the District reported her criminal activity to the police on any occasion after May 26, 2021. C ¶49. As such, she should have reasonably become aware of this alleged retaliatory conduct on May 26, 2021.

Finally, Plaintiff received a letter from Mr. Pegg notifying her that she was not permitted on District property without scheduling an appointment in advance following her meeting with a District Principal, Guidance Counselor and a teacher in a conference room on District premises on June 21, 2021. C ¶74, 97-102(c). Plaintiff has attached the notice from Mr. Pegg to the Complaint as Exhibit 1.C ¶74, 97; See ECF No.1-2. Accordingly, it is clear on the face of the Complaint that the final alleged retaliatory action, or action of any kind for that matter, that Plaintiff has pled against either Mr. Pegg or the District took place on June 21, 2021.

As such, Plaintiff was required to file any First Amendment Retaliation claim pursuant to Section 1983 arising from this matter by June 21, 2023. The Complaint was not filed until July 24, 2023 and thus Plaintiff's claims are time barred. This is because the events referenced above would have been when Plaintiff knew or should have known of the injuries upon which her claims are based. These tolling dates apply even though the full extent of any alleged injuries as a result of these actions might not have been known at the time they occurred. As such, Count I against both the District and Mr. Pegg must be dismissed with prejudice.

### B. The Complaint Fails to Establish a Prima Facie Malicious Prosecution Claim Against the District or Mr. Pegg.

Count III of the Complaint sets forth a claim of malicious prosecution pursuant to Section 1983, alleging a violation of the Fourth Amendment against both the District and Mr. Pegg. Count VI sets forth a malicious prosecution claim pursuant to Pennsylvania law against Mr. Pegg. Notably, Plaintiff does not aver that any District employee or representative other than Mr. Pegg took any action to initiate a criminal prosecution against her. Plaintiff has failed to plead a prima

facie case on either count.

"To prove malicious prosecution under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). The first four elements are the same under Pennsylvania common law. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000).

Plaintiff cannot demonstrate, even at a prima facie level, that Mr. Pegg, and therefore the District, initiated proceedings against Plaintiff without probable cause. "A private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if: (a) he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice, and (b) the proceedings have terminated in favor of the accused. *Hess v. Lancaster County*, 514 A.2d 681, 683 (Pa. Cmmw. 1986). "[C]riminal proceedings are initiated 'by making a charge before a public official or body in such form as to require the official or body to determine whether process shall or shall not be issued against the accused.'" *Tomaskevitch v. Specialty Records Corp.,* 717 A.2d 30, 33 (Pa. Cmmw. 1998).

Pursuant to Section 653 of the Second Restatement of Torts, which has been adopted by Pennsylvania appellate courts:

"[a] private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not....if, however, the information is known by the giver to be

false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false."

*Hess* at 683. While Mr. Pegg is a government official, his power as District Superintendent does not confer upon him the authority to make arrests or file criminal charges. Accordingly, he can only be subject to liability if he knowingly provided false information to law enforcement which led to the Plaintiff's arrest and prosecution. Plaintiff has not pled any facts that could support an inference that Mr. Pegg provided false information to police relative to the filing of truancy charges against her.

To the extent that the Plaintiff seeks to include this arrest in her claim for malicious prosecution, she would be barred by the applicable two-year statute of limitations for §1983 claims in Pennsylvania. *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017). A malicious prosecution claim begins to run on the date that the underlying criminal proceedings are terminated in the plaintiff's favor. *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989). According to the Complaint, the truancy charges against the Plaintiff were dropped by the truancy officer before the magisterial district judge on June 16, 2021. C ¶ 66. As such, a malicious prosecution claim for Plaintiff's truancy prosecution is both insufficiently pled and time barred.

As to the harassment charges filed against Plaintiff by the Pennsylvania State Police, it is clear from the face of the Affidavit of Probable Cause, attached to the Complaint as Exhibit 3, that Mr. Pegg's representations were not the determining factor in Trooper Student's decision to commence the prosecution. Per Trooper Student's report, "Pegg played multiple voicemail recordings from [Plaintiff] where she referred to the Albert Gallatin School District as a

Communist organization, accompanied with threats to see to it that all employees are required to forfeit their employment. Throughout the multiple messages were multiple explicit phrases that would be considered offensive and harassing in nature." ECF No. 1-3 *4.

Accordingly, Trooper Student did not rely solely on the information provided by Mr. Pegg. Trooper Student was able to listen to Plaintiff's messages which constituted the complained of criminal misconduct himself and exercised his own discretion as to whether probable cause existed to support a harassment charge. There is no allegation in the Complaint that important information was withheld from Trooper Student by the District or Mr. Pegg. Trooper Student's determination that probable cause existed was affirmed by the judgment of a magisterial district judge at Plaintiff's preliminary hearing on April 25, 2022. C ¶ 78. It is abundantly apparent on the face of the Complaint that none of the proceedings against Plaintiff were brought without probable cause. As such, Count III against the District and Counts III and VI against Mr. Pegg must be dismissed with prejudice.

### C. Mr. Pegg is Entitled to Absolute Immunity from Plaintiff's Claims of Malicious Prosecution, Intentional Infliction of Emotional Distress, False Light/Slander or Abuse of Pennsylvania Law. Process Under

In Counts VI, VII,VIII and IX, Plaintiff asserts state law claims for Malicious Prosecution, Intentional Infliction of Emotional Distress (IIED), False Light/Slander and Abuse of Process against Mr. Pegg. While the Complaint claims to sue him in his individual capacity, it avers that "[i]n all of his actions, [he] was acting under color of state law and in the course of his employment." C ¶ 6. As Plaintiff acknowledges that all of the actions alleged against Mr. Pegg came in the course of his duties as District Superintendent, these claims should be treated as claims made against him in his official capacity. Accordingly, Counts VI-IX of the Complaint should be treated as claims against municipal entities and are therefore barred under Pennsylvania law.

In a suit against a government official in his official capacity, the "real party in interest …
is the governmental entity and not the named official." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).
Accordingly, to the extent that in Counts VI-IX, Plaintiff asserts state law claims for Malicious
Prosecution, IIED, False Light/Slander and Abuse of Process against Mr. Pegg in his official
capacity, it is treated as a claim against the municipal entity that employs Mr. Pegg - i.e., the
District. Because Plaintiff's state law claims against the District would be barred as a matter of
law, the claims against Mr. Pegg in his official capacity are also barred.

Even assuming, arguendo, that Plaintiff can assert these claims against Mr. Pegg in his
individual capacity, those claims would fail as well.   The Tort Claims Act provides in pertinent
part:

> "In any action brought against an employee of a local agency for damages on account of
> an injury to a person or property based upon claims arising from, or reasonably related
> to, the office or the performance of the duties of the employee, the employee may assert
> on his own behalf, or the local agency may assert on his behalf: (1) defenses which are
> available at common law to the employee ..." 42 Pa.C.S.A. § 8546.

Pennsylvania common law recognizes the doctrine of absolute immunity for "high public
officials." *See Lindner v. Mollan,* 544 Pa. 487, 490–91, 677 A.2d 1194, 1195–96 (1996) (holding
that the Tort Claims Act does not abrogate high public official's absolute immunity from civil suits
arising out of false defamatory statements). "Absolute privilege, as its name implies, is unlimited,
and exempts a high public official from all civil suits for damages arising out of false defamatory
statements and even from statements or actions motivated by malice, provided the statements are
made or the actions are taken in the course of the official's duties or powers and within the scope
of his authority, or as it is sometimes expressed, within his jurisdiction." *Durham v. McElynn*,
772 A.2d 68, 69 (Pa. 2001) citing *Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952). Moreover,
Pennsylvania courts have recognized that school superintendents, such as Mr. Pegg, qualify as

high public officials for purposes of this common law doctrine. *See, e.g., Petula v. Mellody,* 158 Pa.Cmwlth. 212, 631 A.2d 762 (1993); *Matta v. Burton,* 721 A.2d 1164, 1166 (Pa.Cmwlth.1998).

In *Lindner,* the Supreme Court of Pennsylvania held that high public official immunity is an unlimited privilege that exempts high public officials from lawsuits for defamation, provided the statements made by the official are made in the course of his official duties and within the scope of his authority. Although ordinary local agency employees can be held liable if they have engaged in crime, actual fraud, actual malice or willful misconduct, *see* 42 Pa.C.S.A. § 8550; *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987), high public officials accused of defamation enjoy absolute immunity even when willful misconduct is alleged, *see Lindner,* 544 Pa. 487, 677 A.2d 1194 (1996); *Kuzel v. Krause,* 658 A.2d 856 (Pa.Cmwlth.1995).

Similarly, in *Matson,* the Supreme Court of Pennsylvania recognized that "[e]ven though the innocent may sometimes suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or libel, or *malicious prosecution suits*, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment proof public officials from performing their official duties." *Id* at 899 (emphasis added). As such, high public officials enjoy absolute immunity from claims for malicious prosecution where the statements at issue arise in the course of their official duties.

In the instant case, Plaintiff has alleged that Mr. Pegg engaged in defamation, intentional infliction of emotional distress, malicious prosecution and abuse of process against her under Pennsylvania Common Law. Admittedly, the Supreme Court of Pennsylvania's holdings in *Lindner* and *Matson* involved the torts of defamation and malicious prosecution, and the Supreme Court has yet to decide whether the immunity for high public officials extends to other intentional

14

torts.   When a state's highest court has not addressed the precise question presented in a diversity action, a federal court must predict how the state's highest court would resolve the issue.   *See Paolella v. Browning–Ferris, Inc.,* 158 F.3d 183, 189 (3d Cir.1998). In doing so a district court may consider the decisions of state intermediate appellate courts in order to facilitate its prediction. *See id.*

In *Smith v. School District of Philadelphia*, 112 F.Supp. 417, 426 (E.D. Pa. 2000), the Third Circuit predicted that the Supreme Court of Pennsylvania would hold that the Tort Claims Act does not abrogate high public official's absolute immunity from civil suits for intentional infliction of emotional distress.   In making that prediction, the Court relied primarily on the *Lindner* court's explanation that the Pennsylvania common law doctrine of absolute immunity for high public officials "rests upon the idea that conduct which otherwise would be actionable is to escape liability because the defendant is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to the plaintiff's reputation." Also significant to the Court was the *Lindner* court's statement that "this sweeping immunity is not for the benefit of high public officials, but for the benefit of the public." *Id*., *citing Lindner,* 544 Pa. at 490, 677 A.2d at 1195.

The Court in *Smith* further noted in its decision that one Pennsylvania Commonwealth Court decision relied on *Lindner* in holding that the doctrine of absolute immunity for high public officials extended to suits against municipal officials for intentional torts other than defamation, specifically tortious interference with employment relationship and intentional infliction of emotional distress. *Smith*, 112 F.Supp. at 426, *citing Holt v. Northwest Pa. Trng. Prtshp. Consrtm., Inc.,* 694 A.2d 1134, 1140 (Pa.Commw.1997). Similarly, the federal courts of Pennsylvania have applied *Matson, Linder* and *Durham* in holding that high public officials have absolute immunity

15

from claims of abuse of process. *Douris v. Schweiker*, 229 F.Supp.2d 391, 402–03 (E.D.Pa.2002); see also *Miller v. N. Belle Vernon Borough*, CIV. A. 8-1435, 2009 WL 112854, at *5 (W.D. Pa. Jan. 15, 2009).

According to Plaintiff's Complaint, the actions allegedly taken by Mr. Pegg were taken within the course of his official duties or powers and within the scope of his authority. In light of those allegations, Mr. Pegg is entitled to invoke the doctrine of absolute immunity for high public officials pursuant to 42 Pa.C.S.A. § 8546, and any potential claim against him in his individual capacity must be dismissed as well.   As such, Counts VI, VII,VIII and IX of the Complaint against Mr. Pegg must be dismissed with prejudice.

### D. Plaintiff's IIED Claim Against Mr. Pegg is Time Barred.

Pennsylvania's two year statute of limitations for personal injury actions also applies to claims of IIED. *Bougher v. U. of Pittsburgh*, 882 F.2d 74,80 (3d Cir. 1989). In her Complaint, Plaintiff alleges that Mr. Pegg took a number of actions against her, discussed at length above, which cause her to suffer emotional distress. To the extent, that this Court determines that Mr. Pegg does not possess absolute immunity from suit as a high public official, it should find that Plaintiff's claims are time barred. According to the Complaint, the last alleged action taken by Mr. Pegg relative to this matter was sending her a letter restricting her access to District premises, requiring her to have advance permission. C ¶97-102(c). That letter is dated June 21, 2021. ECF No.1-2. As such, Plaintiff's claim for IIED became time barred on June 21, 2023, two years after that last alleged action by Mr. Pegg. Accordingly, Count VII of the Complaint against Mr. Pegg must be dismissed with prejudice.

**E. Even Assuming That Plaintiff May Pursue an IIED Claim Against Mr. Pegg in his Individual Capacity, and that this Claim is Not Time Barred, the Complaint fails to Establish a Prima Facie IIED Claim.**

In the context of a motion for judgment on the pleadings, under Pennsylvania law to support a claim of intentional infliction of emotional distress a plaintiff must allege conduct that: 1) is extreme and outrageous; 2) is intentional or reckless; and 3) causes severe emotional distress. *See Williams v. Guzzardi,* 875 F.2d 46 (3d Cir.1989); *Hoy v. Angelone,* 456 Pa.Super. 596, 610, 691 A.2d 476 (1997). It is for the Court to decide at the pleadings stage whether the conduct at issue can reasonably be regarded as sufficiently extreme to constitute "outrageousness" as a matter of law. *See* \*428 *Kuzel v. Krause,* 658 A.2d 856, 860 (Pa.Commw.1995); *Corbett v. Morgenstern,* 934 F.Supp. 680, 684 (E.D.Pa.1996).

Liability for intentional infliction of emotional distress "has been found only where ... the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous.'" *Hunger v. Grand Central Sanitation,* 447 Pa.Super. 575, 584, 670 A.2d 173 (1996) (applying the Restatement (Second) of Torts § 46, Comment d (1965)).   Pennsylvania courts have found intentional infliction of emotional distress only where the conduct at issue has been "atrocious" and "utterly intolerable in a civilized community." *Banyas v. Lower Bucks Hosp.,* 293 Pa.Super. 122, 437 A.2d 1236 (1981)).   They have recognized that tort, for example, where the defendant sexually harassed his employee and also forbade her from speaking with others, followed her at work, and withheld necessary information from her, *Bowersox v. P.H. Glatfelter Co.,* 677 F.Supp. 307, 311 (M.D.Pa.1988), and where the defendant's car hit a child, defendant buried him on the side of the road, and the parents discovered the body only months afterwards, *see Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970).

The allegations against Mr. Pegg fall well short of the foregoing standard for outrageousness. Plaintiff claims that she was blocked from commenting on District Facebook pages, barred from District premises without specific permission and had her harassing telephone calls and her children's truancy reported to the police. Even if true, such conduct could never rise to the level of outrageousness required to sustain a claim for intentional infliction of emotional distress as a matter of law. Accordingly, the claim for IIED set forth in Count against Mr. Pegg must be dismissed.

**F. Even Assuming That Plaintiff May Pursue a Slander Claim Under Pennsylvania Law Against Mr. Pegg in his Individual Capacity, Such a Claim is Time Barred.**

Section 5523 of the Pennsylvania Judicial Code "requires that an action for libel, slander or invasion of privacy be commenced within one year from occurrence." *Abernethy v. Williams*, 584 A.2d 1085, 1087 (Pa. Cmmw. 1990). "In order for defamation to occur in either case the defamatory statement must be "published" that is, communicated to a third person." *Sobel v. Wingard*, 531 A.2d 520, 522 (Pa. Super. 1987).

Mr. Pegg's reports to the Pennsylvania State Police relative to Plaintiff's harassment and truancy issues are the statements that the Complaint alleges were defamatory. C ¶ 136. However, the truancy report was allegedly made on May 26, 2021. C ¶ 49; ECF No. 1-3 *4. Therefore, the statute of limitations to bring a claim for defamation expired on May 26, 2022. As such, Plaintiff failed to file a timely claim for defamation, as the Complaint was not filed until July 24, 2023. Accordingly, Count VIII of the Complaint against Mr. Pegg must be dismissed with prejudice.

**G. Plaintiff Cannot Pursue a Claim of Slander Against Mr. Pegg Under Pennsylvania Law, as Reports of Suspected Crimes to Police are Absolutely Privileged as Statements Preliminary to Judicial Proceeding.**

Statements made by private parties solely to law enforcement officials in which an accusation of crime is made for the purpose of inducing prosecution of criminal charges are

absolutely privileged as statements preliminary to judicial proceeding. *Pawlowski v. Smorto*, 588 A.2d 36 (Pa. Super. 1991). "[T]he existence of the privilege does not depend upon the motive of the defendant in making the allegedly defamatory statement…[t]he privilege is absolute and cannot be destroyed by abuse." *Id* at 42. Whether a particular statement is absolutely privileged is a question of law for the court. *Id* at 41.

The Complaint does not allege that Mr. Pegg made defamatory statements about Plaintiff to anyone other than the Pennsylvania State Police, as discussed at length above. As Plaintiff alleges in the Complaint, the purpose of these reports was to initiate criminal proceedings. As such, all of Mr. Pegg's statements to the Pennsylvania State Police which Plaintiff alleges are defamatory are protected by absolute privilege. Therefore, Count VIII of the Complaint against Mr. Pegg must be dismissed with prejudice.

### H. Plaintiff Has Failed to State a Prima Facie Abuse of Process Claim Against Mr. Pegg.

"To state a claim for abuse of process under Pennsylvania law, the plaintiff must show (1) that the defendant used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." *Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998). "Pennsylvania state claims for abuse of process and malicious prosecution are "separate and distinct.'" *Skinner v. Hadlock*, CV 22-3087, 2022 WL 16856352, at *3 (E.D. Pa. Nov. 10, 2022) citing *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987). "The former is "a perversion of a process after it is issued" and the latter is "the wrongful initiation of such process.'" *Id.* "[A]n abuse of process claim cannot be based on the wrongful initiation of proceedings. *Greenberg v. McGraw*, 161 A.3d 976, 991 (Pa. Super. 2017).

Here, it has not been pled that Mr. Pegg took any action relative to the criminal proceedings against Plaintiff other than reporting her to the State Police for truancy and harassment. There is

no averment that Mr. Pegg took any action following these initial reports to the Pennsylvania State Police. Further, aside from a legal conclusion that Mr. Pegg made these reports to "oppress her First Amendment Rights" the Complaint is silent as to their allegedly improper purpose. There is no allegation in the Complaint that Mr. Pegg's reports did anything to prevent her from speaking out. Further, there is nothing pled in the Complaint to infer that Mr. Pegg's reports to the State Police were made for any purpose other than those which were proper under the law – to compel her to have her children attend school and to stop her from continuing to harass the school district staff with "explicit" messages which were "harassing and offensive in nature." ECF No. 1-3 *4.

As the Complaint fails to plead that Mr. Pegg did anything more than initiate criminal proceedings against Plaintiff, it fails to state a prima facie case for abuse of process. Accordingly, this claim is redundant with the malicious prosecution claims pled against the District and Mr. Pegg in Counts III and VI. As such, Count IX of the Complaint against Mr. Pegg must be dismissed with prejudice.

## I. Plaintiff Cannot Recover Punitive Damages Against the District or Mr. Pegg.

In the event that Plaintiff's claims survive Defendants' Rule 12(b)(6) Motion to Dismiss, Defendants need to address Plaintiff's claims for punitive damages against Defendants.  As a matter of public policy, punitive damages are not recoverable against a municipality in Pennsylvania. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 263 (1981); Feingold v. SEPTA, 517 A.2d 1270, 1277 (Pa. 1986). A school district is considered a local agency under the PPSTCA, and therefore punitive damages are not recoverable against the District. *Doe by Brown v. Harrisburg Sch. Dist.*, 1:19-CV-1027, 2020 WL 4584372, at *6 (M.D. Pa. Aug. 10, 2020). Additionally, complaints against a public official in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*

*v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 1978). Accordingly, Plaintiff's claims for punitive damages against the District and Mr. Pegg in his official capacity must be dismissed.

**J.  Plaintiff Cannot Recover Attorney's Fees With Respect to Her State Law Claims Against Mr. Pegg.**

Plaintiff has requested the award of attorney fees in connection with her state law claims under Counts VI, VII, VIII and IX against Mr. Pegg. Pennsylvania adheres to the "American Rule," under which litigants are responsible for their own counsel fees unless otherwise permitted by express statutory authority. *Petow v. Warehime*, 2010 PA Super 95, 996 A.2d 1083 (2010). Plaintiff has failed to provide, nor does there exist, express statutory for the award of attorney fees for Plaintiff's state law claims. *See also Ramsey v. Summers*, 10-CV-00829, 2011 WL 811024, at *3 (W.D. Pa. Mar. 1, 2011) (granting dismissal of requests for attorney fees based on claims of negligence per se and negligence); *Bland v. Bland*, 50 Pa. D. & C.2d 44, 52 (Pa. Com. Pl. 1970) (holding that attorney fees are not recoverable based on a claim of intentional infliction of emotional distress).

Accordingly, in the event that the Court does not grant Defendant's request for the outright dismissal of the Complaint or the state law claims, Plaintiff's claims for attorney fees in connection with Counts VI, VII, VIII and IX against Mr. Pegg must be dismissed with prejudice.

**IV.     CONCLUSION**

For the reasons set forth above, the District and Mr. Pegg respectfully request that the Court find that Plaintiff has failed to state a claim for which relief can be granted with respect to all counts set forth against them in Plaintiff's Complaint. Accordingly, each of these counts must be dismissed with prejudice. In the alternative, the District respectfully requests that the Court find that Plaintiff has failed to state a claim for which relief can be granted with respect to any punitive

damages against the District or against Mr. Pegg in his official capacity; or to entitle him to attorney's fees from Mr. Pegg with respect to Counts VI-IX.

Respectfully, submitted,

**ANDREWS & PRICE, LLC**

September 1, 2023         /s/ Joseph W. Cavrich
(Date)                   Joseph W. Cavrich, Esquire
                         Attorney for Defendants,
                         Albert Gallatin School District and Christopher Pegg

                         1500 Ardmore Boulevard
                         Suite 506
                         Pittsburgh, PA 15221
                         (412) 243-9700 (phone)
                         (412) 243-9660 (fax)
                         jcavrich@andrewsandprice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2023, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic case filing system and constitutes service of this filing under Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Parties may access this filing through the Court's ECF system.

/s/ Joseph W. Cavrich
Joseph W. Cavrich
