## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHELLE M. PERKEY,                               )
                                                  )   No. 2:23-cv-1326
                    Plaintiff,                    )
                                                  )
          v.                                      )   Judge Robert J. Colville
                                                  )
ALBERT GALLATIN SCHOOL DISTRICT,                  )
et al.,                                           )
                                                  )
                    Defendants.                   )

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

      Before the Court is the Motion to Dismiss (ECF No. 26) filed by Defendants Albert Gallatin School District (the "District") and Christopher Pegg ("Mr. Pegg") (collectively, "Moving Defendants"). The Moving Defendants seek dismissal of each of the claims set forth against them in the operative Amended Complaint (ECF No. 18) (the "Complaint") filed by Plaintiff Michelle M. Perkey. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. The Motion to Dismiss has been fully briefed and is ripe for disposition.

### I.      Factual Background & Procedural History

      In the Complaint, Plaintiff sets forth the following factual allegations relevant to the Court's consideration of the Motion to Dismiss:

1

At all times relevant herein, Mr. Pegg was employed by the District as its superintendent. Compl. ¶ 6, ECF No. 18.  Plaintiff is the parent of two minor students who attended 8th and 9th grade in the District during the 2019-2020 school year.  *Id.* at ¶¶ 12-15.  On or about March 13, 2020, the District closed its schools in response to the COVID-19 pandemic and adopted a remote learning program involving students' use of District-issued computer tablets to attend classes remotely from home.  *Id.* at ¶¶ 24-25.

The District offered parents of students enrolled in the District access to two Facebook pages, an "Official" District page and a "Parents Page."  Compl. ¶¶ 18-20, ECF No. 18.  Plaintiff posted information on these pages that purportedly contradicted the CDC's policies and statements respecting the effectiveness of masks and lock downs with respect to COVID-19.  *Id.* at ¶¶ 21-23; 31; 41.  She further posted comments criticizing the District's remote learning and mask-wearing policies, as well as comments criticizing the District itself, its administrators and teachers, and Mr. Pegg.  *Id.*  Plaintiff also verbally communicated these criticisms.  *Id.* at ¶ 30.

During the timeframe that students were required to attend class remotely, Plaintiff experienced financial difficulties and was unable to afford an internet connection to enable her children to attend remote classes.  Compl. ¶ 27, ECF No. 18.  Because Plaintiff lives in a rural area, the available internet service was not reliable.  *Id.* at ¶ 36.  Plaintiff learned that the District provided free internet service to other students to facilitate access to the remote learning program. *Id.* at ¶ 28.  Plaintiff contacted the District to request free internet service, but the District refused her request.  *Id.* at ¶¶ 30; 32.

During the 2020-2021 school year, Plaintiffs' children's teachers emailed Plaintiff to inform her that her children were not completing their assigned work and that they were receiving failing grades.   Compl. ¶ 33, ECF No. 18.  Following these communications, Plaintiff "became

very critical of the fact that the schools [were] operating remotely." *Id.* at ¶ 34.  In responding to the teachers' emails, Plaintiff expressed frustration and further criticized the District's remote learning program.  *Id.* at ¶ 35.

When the District's schools reopened, students were required to wear protective masks during the school day.  Compl. ¶ 38, ECF No. 18.  At that time, Plaintiff elected to have her children complete the 2020-2021 school year via the remote learning program as opposed to in-person.  *Id.* at ¶ 39.  Each of Plaintiff's two children failed the 2020-2021 school year.  *Id.* at ¶ 40.

Plaintiff subsequently posted a comment to the District's Parents Facebook page criticizing the District's administrators and policies, as well as a video containing a "medical argument relative to [COVID-19] and ineffectiveness of requiring masks for students."  Compl. ¶¶ 41-42, ECF No. 18.  Almost immediately, Plaintiff's post was removed, and she was blocked from accessing both the District's Parent and Official Facebook pages by the pages' administrators.  *Id.* at ¶¶ 43-44.  Given that she was blocked from both pages simultaneously, Plaintiff asserts that the administrators acted in concert.  *Id.* at ¶ 54.  As of the date the Complaint was filed, Plaintiff's access to the Facebook pages had not been restored.  *Id.* at ¶¶ 45-46.  Mr. Pegg directed the pages' administrators to block Plaintiff's access and to not restore her access, or alternatively, condoned the administrators' actions.  *Id.* at ¶¶ 47-48.  Plaintiff contacted the Facebook page administrators, but did not receive a response.  *Id.* at ¶ 53.

After being blocked from accessing the District's Facebook pages, Plaintiff continued to "raise questions" about the District's mask requirement.  Compl. ¶ 55, ECF No. 18.  She also "raised questions" on social media regarding funds paid to the District by the federal government.  *Id.* at ¶ 56.

The District maintains a police force known as the Albert Gallatin School Police, comprised of retired state police officers and retired municipal police officers. Compl. ¶ 57, ECF No. 18. In his role as superintendent, Mr. Pegg directs the School Police, including by directing school police officers to make arrests and file charges either personally or through other District administrators, particularly in cases of truancy. *Id.* at ¶¶ 58-60. Where parents whose children's absences exceeded the legally acceptable number of school days, the District's previous practice involved the District's attendance officer, at the direction of Mr. Pegg, directing school police officers to file charges of truancy against the parents. *Id.* at ¶ 61. Due to rising absences during the pandemic, this practice was modified, and truancy charges were brought only against parents whose children had "excessive school absences." *Id.* at ¶¶ 62-63. At the hearings arising out of these pandemic-related truancy cases, the District attendance officer would appear and withdraw the charges or request that the truancy charges be dismissed. *Id.* at ¶ 64.

On or before May 26, 2021, Mr. Pegg contacted the Pennsylvania State Police ("PSP"), and specifically Trooper Craig P. Student ("Trooper Student") and Trooper John Doe, to make complaints about Plaintiff. Compl. ¶ 65, ECF No. 18. On May 26, 2021, Trooper Student and Trooper John Doe traveled to Plaintiff's home and falsely informed Plaintiff that there was an outstanding warrant for Plaintiff's arrest for charges of truancy. *Id.* at ¶¶ 66; 74-78. While Plaintiff had been charged with truancy, the truancy charges pending at that time were filed by the District's school police, and not the PSP. *Id.* at ¶¶ 68; 91. The troopers did not produce a warrant during the May 26, 2021 encounter, and Plaintiff avers that the troopers did not actually possess a warrant. *Id.* at ¶¶ 74-78.

The troopers' visit to Plaintiff's home was seemingly also related to voicemail recordings Plaintiff left for the District on or before May 26, 2021 referring to District staff as "communists"

and threatening to "have their jobs." *Id.* at ¶¶ 87; 105-06, *see also* ECF No. 18-2 at 4. Mr. Pegg reported the voicemails to Trooper Student, ECF No. 18-2 at 4, and involved the PSP in this situation due to Plaintiff's prior complaints about the District, its policies, and its employees/officials, Compl. ¶ 70, ECF No. 18. Trooper Student visited Plaintiff's house because Trooper Student and Mr. Pegg maintained an "interpersonal relationship." *Id.* at ¶ 69. Plaintiff was not arrested on May 26, 2021, and the PSP did not file charges against Plaintiff until July 26, 2021, when Plaintiff was charged with misdemeanor harassment related to the voicemails that Plaintiff had left for the District. *Id.* at ¶¶ 71-72; 87; 106.

On June 16, 2021, Plaintiff appeared before the local District Justice on her truancy charges, where the truancy/attendance officer appeared and dropped Plaintiff's truancy charges. Compl. ¶ 92, ECF No. 18. Due to her children's failing grades, Plaintiff made arrangements with the school nurse for the children to attend summer school without a mask requirement. *Id.* at ¶ 93. Despite the nurse's approval and the lifting of state-wide mask mandates, the children were required to wear masks. *Id.* at ¶¶ 94-96. Plaintiff asserts that her children were required to wear masks because of her prior criticism of the District. *Id.* at ¶ 98. Plaintiff subsequently contacted the District by telephone to complain about the District's mask requirement. *Id.* at ¶ 97. The District did not return Plaintiff's calls. *Id.* at ¶ 99.

On June 21, 2021, Plaintiff visited the District's high school to discuss her children's failure of the 2020-2021 school year. Compl. ¶ 127, ECF No. 18. District staff were not wearing masks when Plaintiff entered the building, but staff in the school's office donned masks upon observing Plaintiff. *Id.* at ¶ 128. Plaintiff met with the principal, the guidance counselor, and a teacher in a conference room, and the principal and teacher quickly scolded Plaintiff for her failure to wear a mask, with the teacher citing personal offense to Plaintiff's failure to wear a mask. *Id.*

at ¶¶ 130-32.  During the meeting, Plaintiff confronted the District officials regarding their failure to return her phone calls.  *Id.* at ¶ 134.

In response to Plaintiff's prior criticisms and her visit to the school on June 21, 2021, *see* ECF No. 18-1, Mr. Pegg sent a letter to Plaintiff dated June 21, 2021 instructing Plaintiff that, "in order to be on district property, you must schedule an appointment in advance with the appropriate administrator or school counselor," Compl. ¶ 100, ECF No. 18.  This restriction has not been lifted to date.  *Id.* at ¶¶ 101-04.

As noted, after the District failed to answer or return Plaintiff's calls, Plaintiff left the District voicemail recordings on or before May 26, 2021 referring to the staff as "communists" and threatening to "have their jobs."  Compl. ¶¶ 87; 105-06, ECF No. 18, *see also* ECF No. 18-2 at 4.  On July 26, 2021, i.e., two months after his visit to Plaintiff's home, Trooper Student, at the direction of Mr. Pegg and based upon their personal relationship, filed a criminal complaint against Plaintiff charging Plaintiff with one misdemeanor count of "HARASSMENT – COMM-LEWD, THREATENING, ETC. LANGUAGE" related to the voicemails.  Compl. ¶¶ 73; 106, ECF No. 18.  Mr. Pegg testified against Plaintiff at an April 25, 2022 Preliminary Hearing related to this charge, but no audio tapes of the purportedly harassing-in-nature voicemails were introduced.  *Id.* at ¶ 108.  Plaintiff believes and avers that the content of the audio recordings at issue would reveal that the voicemails did not rise to the level of criminal harassment.  *Id.* at ¶¶ 109-10.

Following the preliminary hearing, the Court of Common Pleas of Fayette County found that the Commonwealth had presented a prima facie case, and held the case for court. Compl. ¶ 107, ECF No. 18.  When faced with the prospect of producing the audio recordings to a judge and jury, Mr. Pegg informed the Fayette County District Attorney that he no longer wished to pursue criminal charges against Plaintiff.  *Id.* at ¶ 111.  The harassment charge was nolle prossed and

dismissed on September 21, 2022 because "the victim [did] not wish to proceed." *Id.* at ¶¶ 115-17. Plaintiff believes that her prior criticisms were the motivation for the filing of the harassment charge against her, and that all Defendants participated in a conspiracy and acted in concert with respect to the filing and pursuit of the harassment charge. *Id.* at ¶¶ 118-26. Plaintiff has withdrawn her children from the District. *Id.* at ¶ 135.

Plaintiff filed the Complaint on September 20, 2023. Plaintiff originally asserted the following claims in the Complaint, as summarized by the Moving Defendants:

> Plaintiff's Amended Complaint contains ten (10) counts - Count I – First Amendment Retaliation pursuant to 42 U.S.C. § 1983 (all Defendants); Count II – Violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983 (Defendants Craig P. Student and Trooper Jane Doe); Count III – Violation of Fourth Amendment/Violation of Pennsylvania Common Law Rights/Malicious Prosecution pursuant to 42 U.S.C. § 1983 (Albert Gallatin School District, Christopher Pegg, Trooper Craig P. Student and Trooper John Doe); Count IV – Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983/Reckless Investigation (Trooper Craig P. Student and Trooper John Doe); Count V – Violation of Fourth Amendment pursuant to 42 U.S.C. § 1983/Unlawful Search and Seizure (Trooper Craig P. Student and Trooper John Doe); Count VI – State Law Claim Malicious Prosecution (Christopher Pegg, Trooper Craig P. Student, and Trooper John Doe); Count VII – State Law Claim Intentional Infliction of Emotional Distress (Christopher Pegg, Trooper Craig P. Student, and Trooper John Doe); Count VIII – State Law Claim False Light / Slander (Christopher Pegg and Trooper Craig P. Student); Count IX – State Law Claim Abuse of Process (Christopher Pegg, Trooper Craig P. Student, and Trooper John Doe); and Count X – State Law Claim False Arrest / False Imprisonment (Trooper Craig P. Student and Trooper John Doe).

Br. in Supp. 2, ECF No. 27. Trooper Student filed an Answer (ECF No. 28) to the Complaint on October 11, 2023.

By way of her Brief in Opposition (ECF No. 29), Plaintiff has withdrawn the following claims: her intentional infliction of emotional distress claim at Count VII as it relates to Mr. Pegg and the District; her false light/slander claim at Count VIII as it relates to all Defendants; and her

abuse of process claim at Count IX as it relates to all Defendants.[1]  Accordingly, Count VII is no longer at issue as to Mr. Pegg (or the District), and Counts VIII and IX are no longer at issue in this case at all.  For that reason, the Court will not address the merits of those claims herein.  The claims that remain at issue against the District and/or Mr. Pegg are Count I – First Amendment retaliation claim under Section 1983 (both of the Moving Defendants); Count III – Fourth Amendment malicious prosecution claim under Section 1983 (both of the Moving Defendants); and Count VI – malicious prosecution under Pennsylvania law (Mr. Pegg).

Moving Defendants filed their Motion to Dismiss, along with a Brief in Support (ECF No. 27), on October 11, 2023.  Plaintiff filed her Brief in Opposition on November 4, 2023, and Moving Defendants filed a Reply (ECF No. 30) on November 10, 2023.

## II.     Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff.  *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).  While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A "formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

---

[1] The Court notes that the Complaint states that Count VII was brought against Christopher Pegg, Craig P. Student, and John Doe; that Count VIII was brought against Christopher Pegg and Craig P. Student; and that Count IX was brought against Christopher Pegg, Craig P. Student, and John Doe.  Compl. 25-28, ECF No. 18.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.*  (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps."  *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim."  *Iqbal*, 556 U.S. at 675.  Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)).  Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of

the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This is also true where a plaintiff does not request leave to amend. *See Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

## III.     Discussion

### A.  Count I – Retaliation Claim

Plaintiff avers that the Moving Defendants retaliated against Plaintiff based upon her exercise of her First Amendment rights, specifically her criticism of the District, its policies, and its employees and officials, by: (1) refusing to provide a free internet connection to Plaintiff's children despite doing so for other students in the District; (2) blocking Plaintiff's access to both the District's Parent and Official Facebook pages; (3) refusing to return Plaintiff's phone calls, *see* Br. in Opp'n 9, ECF No. 29; (4) providing notice to Plaintiff that she had to schedule an appointment in advance before she could enter District property; and (5) causing Plaintiff's arrest[2]

---

[2] Plaintiff unequivocally asserts that she was not arrested on May 26, 2021. *See* Compl. ¶ 71, ECF No. 18 ("Plaintiff Michelle Perkey was not arrested on [May 26, 2021] for any reason."); *see also id.* at ¶ 87. The Court believes that it is a reasonable inference that the arrest to which Plaintiff refers took place after the filing of the misdemeanor harassment charge against her on July 26, 2021. *See id.* at ¶ 118 (directly after describing the legal proceedings related to the harassment charge, the Complaint provides: "Plaintiff believes, and therefore avers[,] that her arrest on the above referenced charges was in retaliation to the Plaintiff's assertion of her first amendment rights, under the Constitution of the United States of America, by criticizing the School District's [COVID-19] Policies.

and criminal prosecution.  Compl. ¶ 136, ECF No. 18.  Section 1983 establishes "a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights." *Burella v. City of Philadelphia,* 501 F.3d 134, 139 (3d Cir. 2007) (quotations omitted).  To obtain relief under § 1983, a plaintiff must show: (1) that they suffered a violation of a right secured by the Constitution and laws of the United States; and (2) that the alleged deprivation was committed by a person acting under the color of state law.  *See Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted).

Moving Defendants argue that Plaintiff's Section 1983 claim for First Amendment retaliation is time-barred.[3]  Br. in Supp. 8, ECF No. 18.  The running of the statute of limitations is an affirmative defense, and "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

"The statute of limitations for a § 1983 claim arising in Pennsylvania is two years." *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 480 (3d Cir. 2014) (citing *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)).  "The date of accrual in a § 1983 action is determined by federal law."  *Id*.  A cause of action accrues under federal law "when the plaintiff knew or should have known of the injury upon which the action is based."  *Id*.  With respect to accrual, the Third Circuit has explained:

> The determination of the time at which a claim accrues is an objective inquiry; we ask not what the plaintiff actually knew but what a reasonable person should have known.  *Barren v. United States*, 839 F.2d 987, 990 (3d Cir. 1988).  As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury.  *See United States v. Kubrick*, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979).  "The cause of

---

[3] While Plaintiff advances argument that she has alleged facts sufficient to state a retaliation claim, the Court notes that the Moving Defendants' Motion to Dismiss challenges Count I on only timeliness grounds at this juncture.

action accrues even though the full extent of the injury is not then known or predictable. Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." *[Wallace v. Kato*, 549 U.S. 384, 391 (2007)].

*Kach*, 589 F.3d at 634–35.

Plaintiff's retaliation claim is clearly time-barred to the extent that it relies on allegations that the Moving Defendants retaliated against her by refusing to provide a free internet connection to Plaintiff's children, blocking Plaintiff's access to both the District's Parent and Official Facebook pages, refusing to return Plaintiff's phone calls, and providing notice to Plaintiff that she had to schedule an appointment in advance before she could enter District property. Each of these events is alleged to have taken place on or before June 21, 2021, when Mr. Pegg sent Plaintiff the letter barring Plaintiff from District property without a prior scheduled appointment. Plaintiff filed her first complaint in this case on July 24, 2023, more than two years after June 21, 2021. Accordingly, Plaintiff cannot rely on any of the alleged retaliatory actions that took place on or before June 21, 2021 to support an independent cause of action for retaliation, a reality Plaintiff candidly acknowledges as a possibility in her Brief, *see* Br. in Opp'n 7, ECF No. 29 ("Assuming arguendo that the court grants the Defendants' motion to dismiss claims for acts that occurred prior to July 24, 202[1], Plaintiff's claims arising from Defendants' acts which occurred on or after July 24 2021 must survive as those violations occurred within the 2 years immediately preceding the filing of the Plaintiff's original complaint on July 24, 2023.").

Even on the most lenient reading of Plaintiff's Complaint, Plaintiff could and should have appreciated her injury from the denial of internet access, the Facebook block, the failure to return her phone calls, and the letter banning her from school property at the time that each event took place. Plaintiff does not provide any true argument to the contrary, relying instead on the

continuing violations doctrine.  Each alleged retaliatory act occurred immediately after Plaintiff criticized the District, its policies, and its employees/officials, and each is distinct and apparent enough such that a reasonable person would recognize that they had been injured.  Accordingly, any cause of action for retaliation related to these events accrued, at the latest, on June 21, 2021, and is time-barred by the statute of limitations.  The same is clear from the face of the Complaint and amendment would be futile.  Thus, any such claim will be dismissed with prejudice.

Plaintiff's attempt to preserve her claim in arguing that both the Facebook ban and the prohibition from entering school property, each of which remains in place to this day, are continuing and ongoing violations is unavailing.  The United States Court of Appeals for the Third Circuit has explained:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement."  *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995).  Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred."  *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1295 (3d Cir.1991).
>
> In order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts."  *West*, 45 F.3d at 755 (quotation omitted).  Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter—whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency—whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence—whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.  *See id.* at 755 n. 9 (citing *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir.1983)).  The consideration of "degree of permanence" is the most important of the factors.  *See Berry*, 715 F.2d at 981.

*Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001).  The continuing violations doctrine can be applied in the context of Section 1983 actions.  *Id.*

"The focus of the continuing violations doctrine is on affirmative acts of the defendants." *Cowell*, 263 F.3d at 293.  In *Cowell*, the Third Circuit found that the mere existence of liens that had been imposed by the defendants did not constitute a continuing violation, and that the defendants' refusal to remove the liens was not an affirmative act of a continuing violation.  *Id*. The Third Circuit cited favorably to the Fourth Circuit's holding in *Ocean Acres Ltd. v. Dare County Bd. of Health*, 707 F.2d 103, 106 (4th Cir.1983) that "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation[,]" noting that the Fourth Circuit's holding comports with the Third Circuit's understanding of the continuing violations doctrine.

"[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."  *Cowell*, 263 F.3d at 295.  "[I]f the prior events should have alerted a reasonable person to act at that time, the continuing violation theory will not overcome the relevant statute of limitations."  *King v. Twp. of E. Lampeter*, 17 F. Supp. 2d 394, 416 (E.D. Pa. 1998), *aff'd*, 182 F.3d 903 (3d Cir. 1999).

More recently, the Third Circuit was presented with a materially similar issue to that presented herein in the case of *Rajkumar v. Gateway Sch. Dist.*, No. 21-2793, 2022 WL 2805126 (3d Cir. July 18, 2022).  In *Rajkumar*, the defendant school district banned the plaintiff from entering school district property in January of 2016, and subsequently extended that ban to cover electronic communications in August of 2018.  *Id.* at *1.  The plaintiff in *Rajkumar* did not file suit related to those bans until January of 2021, well after the two-year statute of limitations expired.  *Id*.  The district court dismissed the plaintiff's claims with prejudice as untimely, and the Third Circuit affirmed.  *Id*.  The Third Circuit explained that "Rajkumar's continued exclusion from school property and prohibition on communicating with school employees are the 'continual

ill effects' of the modified trespass notice[,]" and that, "[b]ecause Rajkumar has not pleaded affirmative acts by the school district falling within the necessary timeframe, the continuing violation theory is inapplicable to his complaint." *Id*.  It further found the discovery rule inapplicable because a reasonable person in the plaintiff's shoes would understand that his ban's duration was indefinite. *Id.* at * 2.

The Facebook ban and prohibition on attending District property are materially identical to the ban and modification at issue in *Rajkumar*.  While the bans were indefinite, the continuing nature of the Facebook and attendance bans are continual ill effects, not affirmative acts. Accordingly, they cannot independently support a retaliation claim under Section 1983.

The Court further notes that, while Plaintiff's arrest and criminal prosecution took place/commenced in July of 2021, which, as discussed below, is sufficient to survive a timeliness objection at this stage, the Court finds that these events are notably distinct from the denial of a free internet connection, the failure to return phone calls, the Facebook ban, and the ban from school premises.  The Court would find that the arrest/prosecution issue constitutes an isolated act, and that each of the three *Cowell* factors would support a finding that it should not be considered as the last act in a continuing practice.

With respect to subject matter, the Court notes that, with perhaps the exception of the Facebook ban and the failure to provide a free internet connection, both of which possibly arose out of Plaintiff's Facebook posts, Plaintiff has alleged that different exercises of her First Amendment rights resulted in each alleged retaliatory act.  Each situation involved an independent purported violation of Plaintiff's rights, each giving rise to an independent cause of action that should have been pursued as such and in a timely manner. *Cowell*, 263 F.3d at 295.

15

"The type of acts that would satisfy the 'frequency' factor of the *Berry* inquiry must at least be acts of substantially similar nature to those which were the basis of the original claim." *Id*. While the alleged five retaliatory acts took place over a somewhat constrained timeframe, again, they are each notably distinct. The Court would find again that the acts are more in the nature of isolated incidents as opposed to a recurring practice.

Finally, and most importantly, the degree of permanence factor unequivocally supports a finding that Plaintiff's arrest/prosecution is an act isolated from the other alleged retaliatory acts. As in *Cowell*, Plaintiff was well aware of the purported wrongfulness of the Facebook ban, the denial of internet access, the failure to return her calls, and the District property ban as a result of Plaintiff's statements about the District, its employees and officials, and its policies. Accordingly, Plaintiff should have "filed a § 1983 claim within the applicable limitations periods," and this factor weighs strongly against application of the continuing violations doctrine. For all of the reasons discussed above, Plaintiff cannot support a Section 1983 claim for retaliation by citing to the Facebook ban, the denial of internet access, the failure to return her calls, and the District property ban. Again, the same is clear from the face of the Complaint and amendment would be futile, and, accordingly, any such claim will be dismissed with prejudice

Turning to Plaintiff's arrest and criminal prosecution, Moving Defendants argue that any retaliation claim based upon that conduct is time-barred because Plaintiff's allegations respecting Mr. Pegg's involvement in Plaintiff's arrest and prosecution were raised for the first time in Plaintiff's operative Amended Complaint. They further argue that the allegations related to Plaintiff's arrest and criminal prosecution do not sufficiently relate back to the original complaint such that the Court could consider the date of the filing of the original complaint in determining whether the retaliation claim based upon Plaintiff's arrest is time-barred. If the Court were to

utilize the date the original complaint was filed, Plaintiff's retaliation claim related to her arrest and prosecution would be timely.  If it utilizes the date of the filing of the operative Complaint, that claim would be time-barred.

Plaintiff alleges in the Complaint that the District and Mr. Pegg, utilizing his influence based upon a personal relationship, directed Trooper Student to go to Plaintiff's home on May 26, 2021 and to file criminal charges against Plaintiff on July 26, 2021 in retaliation for Plaintiff's exercise of her right to free speech.  Compl. ¶¶ 64-76, ECF No. 18.  These allegations related to concerted action between Mr. Pegg and Trooper Student to have troopers visit Plaintiff's home and eventually charge her with harassment would constitute related actions that could reasonably be described as part of a continuing pattern of conduct, a criminal investigation/prosecution of Plaintiff.  It could further be reasonably argued that Plaintiff did not appreciate the true nature of her injury from the May 26, 2021 encounter with Trooper Student until the filing of the criminal harassment charge on July 26, 2021, as Trooper Student represented that he had traveled to Plaintiff's home to arrest her on a truancy charge.

"An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading[.]" Fed. R. Civ. P. 15(c)(1)(B).  "Decisions applying Rule 15(c)(2) in the civil context illustrate that Rule 15(c)(2) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 646 (2005).  The Third Circuit has explained:

> In accordance with the general theory of liberalized pleading in the federal system, Rule 15(c) is premised on the notion that a party is not entitled to the protection of the statute of limitations based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in

the timely filed original pleading.  6A Wright, Miller & Kane, Federal Practice &
Procedure § 1496 (2d ed.1990).  Thus, amendments that restate the original claim
with greater particularity or amplify the factual circumstances surrounding the
pertinent conduct, transaction or occurrence in the preceding pleading fall within
Rule 15(c).  *See, e.g., Clipper Exxpress v. Rocky Mt. Motor Tariff Bureau, Inc.*, 690
F.2d 1240, 1259 n. 29 (9th Cir.), *cert. denied*, 459 U.S. 1227, 103 S.Ct. 1234, 75
L.Ed.2d 468 (1983).  In essence, application of Rule 15(c) involves a search for a
common core of operative facts in the two pleadings.  As such, the court looks to
whether the opposing party has had fair notice of the general fact situation and legal
theory upon which the amending party proceeds.  *See, e.g., Michelsen v. Penney*,
135 F.2d 409, 416–17 (2d Cir.1943) ("[T]he original complaint clearly gave
defendant notice that he would be held for all acts of negligence . . . . [D]efendant
was bound to realize that he would be held for every possible act of
mismanagement.").

*Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004).

Where the original pleading does not sufficiently provide a defendant with fair notice of
the amended claim and the grounds upon which it rests, the purpose of the statute of limitations
has not been satisfied and it is "not an original pleading that [can] be rehabilitated by invoking
Rule 15(c)." *Glover v. F.D.I.C.*, 698 F.3d 139, 146 (3d Cir. 2012) (quoting *Baldwin Cty. Welcome
Ctr. v. Brown*, 466 U.S. 147, 149 n. 3 (1984)).  "[T]he underlying question for a Rule 15(c) analysis
is 'whether the original complaint adequately notified the defendants of the basis for liability the
plaintiffs would later advance in the amended complaint.'"  *Id.* (quoting *Meijer, Inc. v. Biovail
Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008)).  Factual overlap between the pleadings alone is not
enough, as the original complaint must provide fair notice of the amended claim to qualify for
relation back.  *Id.*

Moving Defendants assert that Plaintiff's allegations of a personal relationship between
Mr. Pegg and Trooper Student that led to the filing of criminal charges are too far removed from
the original complaint to allow the operative Complaint to relate back to the date of the filing of
the original complaint.  While admittedly a close call, and while far from as explicit as it could
have been, the Court believes that a fair reading of Plaintiff's original complaint can be determined

to have put the Moving Defendants on notice that Plaintiff intended to pursue a claim related to Mr. Pegg's role, alongside Trooper Student, in the filing of criminal charges against Plaintiff arising out her exercise of her First Amendment rights.

The original complaint is littered with allegations respecting Mr. Pegg's role in Plaintiff's arrest and prosecution.  In particular, the original complaint contains the following allegations:

> Sometime on or before May 26, 2021, in retaliation to the Plaintiff's assertion of her first amendment rights, Defendant Christopher Pegg contacted the Pennsylvania State Police and made complaints to Defendant Trooper Craig Student and Defendant Trooper John Doe regarding the Plaintiff Michelle M. Perkey.
>
> On May 26, 2021, Defendant Pennsylvania State Police Trooper Craig P. Student and Defendant Trooper John Doe appeared at the home of Plaintiff stating they had a warrant for the Plaintiff on charges of Truancy.
>
> . . . .
>
> Plaintiff believe and avers that the Defendant Troopers despite stating to her that they had an arrest warrant never in fact possessed an arrest warrant.
>
> . . . .
>
> When Plaintiff regained consciousness, she was lying on the floor and the Defendant Troopers Craig P. Student and John Doe were gone.
>
> . . . .
>
> Plaintiff believes and avers that Defendant Trooper Craig Student in retaliation for exercising her first amendment rights under the Constitution of the United States interfered with the Plaintiff's 911 call for assistance.
>
> . . . .
>
> On or about July 26, 2021, in retaliation to the Plaintiff's assertion of her first amendment rights, Defendant Trooper Craig P. Student filed a criminal complaint against the Plaintiff Michelle M. Perkey charging her with one misdemeanor count of "HARASSMENT – COMM-LEWD, THREATENING, ETC. LANGUAGE."
>
> . . . .

Therefore, all charges filed by Defendant Trooper Craig Student on behalf of the Defendant Albert Gallatin School District and Defendant Christopher Pegg are dismissed.

Plaintiff believes, and therefore avers that her arrest on the above referenced charges was in retaliation to the Plaintiff's assertion of her first amendment rights, under the Constitution of the United States of America, by criticizing the School District's Covid Policies.

Plaintiff believes, and therefore avers that her arrest on the above referenced charges were based upon untrue accusations of criminal conduct was to punish the Plaintiff for her exercise of her first amendment rights, under the Constitution of the United States of America, by criticizing the School District's Covid Policies.

Plaintiff believes and therefore avers that the Defendants acted in concert and conspiracy with each other to maliciously and unjustifiably harm the Plaintiff and to deprive the Plaintiff of her constitutional rights.

The "Affidavit of Probable Cause" attached to Defendant Craig Student's Criminal Complaint is devoid of any specific dates of alleged telephone calls allegedly made by the Plaintiff to Defendant Christopher Pegg.

The "Affidavit of Probable Cause" attached to Defendant Craig Student's Criminal Complaint is devoid of any specific "elicit" phrases contained in the alleged telephone calls allegedly made by the Plaintiff to Defendant Christopher Pegg other than her calling the Defendant Albert Gallatin School District a "communist organization," "accompanied with threats to see that all employees are required to forfeit their employment."

The Defendants by their actions described herein were not acting in good faith.

    . . . .

The actions of the Defendants acting in concert and conspiracy deprived Plaintiff of rights guaranteed to her by the First Amendment to the United States Constitution.

    . . . .

In retaliation [for] the Plaintiff's exercise of [her] freedom of speech, the Defendants unlawfully: . . . caus[ed] the arrest of the Plaintiff.

    . . . .

As described above, in retaliation to Plaintiff's exercise of free speech, Defendants, acting in concert and conspiracy, unlawfully barred Plaintiff from school district

social media sites, barred Plaintiff from School property without specific permission, and arrested the Plaintiff for exercising her first amendment rights.

. . . .

Defendants Christopher Pegg, Trooper Craig P. Student[,] and Trooper John Doe initiated and pursued multiple proceedings of an administrative and/or criminal nature against Plaintiff without lawful cause.

. . . .

Defendant Trooper Craig P. Student, who acted in concert and conspiracy, with Defendant Trooper John Doe and Defendant Christopher Pegg, failed to properly and adequately investigate the incidents reported by Defendant Pegg.

Defendant Trooper Craig P. Student, who acted in concert and conspiracy with Defendant Trooper John Doe and Defendant Christopher Pegg in failing to properly and adequately investigate the alleged abuse before citing the Plaintiff with criminal charges, acted intentionally or recklessly, and in a manner that shocks the conscience.

. . . .

Defendants Christopher Pegg and Trooper Craig P. Student made false and misleading statements about the Plaintiff, as described more fully above, when they made materially false statements in order to initiate an investigation and file criminal charges against the Plaintiff.

. . . .

Rather than being brought for legitimate purposes, Defendants Christopher Pegg, Trooper Craig P. Student, and Trooper John Doe initiated the afore referenced proceedings against Plaintiff to oppress her First Amendment Rights to free speech under the United States Constitution.

Defendants Pegg, Trooper Craig P. Student, and Trooper John Doe knew or should have known that their initiation and pursuit of proceedings against Plaintiff lacked proper cause.

ECF No. 1 at ¶¶ 49-50; 53; 61; 63; 77; 84-90; 92; 102; 105; 116; 123-24; 136; 142-43.

The operative Amended Complaint's retaliation claim arising out of the District's and Mr. Pegg's role in Plaintiff's arrest and prosecution can fairly be described to arise from a common core of operative facts that were found in the original complaint.  Plaintiff has amplified her factual

allegations as opposed to, as Moving Defendants argue, fundamentally altering her First Amendment retaliation claim.  Moving Defendants, perhaps understandably, express incredulity at the nature of the allegations, i.e., that a school district superintendent maintains some level of control over the PSP such that he could influence troopers to improperly visit Plaintiff's home and file criminal charges against her.  The veracity of such an assertion is, however, one not properly raised in Moving Defendant's Motion to Dismiss, but, perhaps, an issue for another day.

Plaintiff's original complaint spoke at length to the interaction of the Trooper Defendants and Mr. Pegg and an alleged conspiracy between all Defendants, and certainly intimated that Mr. Pegg had a fundamental role in Plaintiff's arrest following receipt of the voicemails that Plaintiff asserts were an exercise of her First Amendment rights.  It is not too far of a stretch to find that the Moving Defendants were on notice that Plaintiff intended to pursue a retaliation claim against the Moving Defendants based upon their involvement in Plaintiff's prosecution, including Mr. Pegg's interactions with Trooper Student.  Accordingly, Plaintiff's claim for retaliation related to Mr. Pegg's role in Plaintiff's criminal prosecution relates back to the filing of the original complaint, and that claim is thus not time-barred.  Moving Defendants' Motion to Dismiss will be denied to the extent it argues that the retaliation claim arising out of Plaintiff's arrest and prosecution is barred by the applicable statute of limitations.

### B. Count III – Fourth Amendment Malicious Prosecution and Count VI – Malicious Prosecution Under Pennsylvania Law

#### 1. Whether Plaintiff States a Claim

At Count III, Plaintiff asserts a Fourth Amendment malicious prosecution claim against each of the Moving Defendants.  At Count VI, Plaintiff asserts a claim for malicious prosecution

under Pennsylvania law against Mr. Pegg.  The Moving Defendants argue that Plaintiff fails to state a claim at either Count.[4]

To succeed on a claim for malicious prosecution under Section 1983, a plaintiff must establish the following:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citing *Donahue v. Gavin*, 280 F.3d 371, 379-80 (3d Cir. 2002)).  In Pennsylvania, a plaintiff alleging common law malicious prosecution must establish only the first four elements listed above.  *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000); *see also Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).  "The action of [a school district] in initiating . . . criminal proceedings and pressing unfounded criminal charges against [an individual] can render the [school district] liable for its major role in a malicious prosecution."  *Merkle*, 211 F.3d at 794.

In arguing that Plaintiff fails to state a claim, Moving Defendants focus on the third requirement for a malicious prosecution claim, arguing that "Plaintiff cannot demonstrate, even at a prima facie level, that Mr. Pegg, and therefore the District, initiated proceedings against Plaintiff without probable cause."  Br. in Supp. 16, ECF No. 27.  With respect to probable cause in the context of a Section 1983 case generally, the Third Circuit has explained:

> "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable

---

[4] While the Moving Defendants advance argument respecting any claim based upon the truancy charges that were filed against Plaintiff by the District's school police, review of the Complaint makes quite clear that Plaintiff's allegations in support of her malicious prosecution claims, each of which involves Trooper Student and Trooper Doe, relate to the harassment charge that was filed by the PSP following Mr. Pegg's complaint.  In any event, the Moving Defendants are correct that any claim related to the truancy charges, whether for malicious prosecution or retaliation, is insufficiently pled and would, in any event, be time-barred.

person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995). Generally, "the question of probable cause in a section 1983 damage suit is one for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998); *see also Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir.1997); *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 190–92 (3d Cir.1984). This is particularly true where the probable cause determination rests on credibility conflicts. *See Sharrar*, 128 F.3d at 818; *Deary*, 746 F.2d at 192. However, a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly. *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir.1997).

*Merkle*, 211 F.3d at 788–89; *see also Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998)

("We have held that the question of probable cause in a section 1983 damage suit is one for the

jury. Summary judgment on Montgomery's malicious prosecution claim therefore is only

appropriate if taking all of Montgomery's allegations as true and resolving all inferences in her

favor, a reasonable jury could not find a lack of probable cause for Montgomery's stop and

arrest.").

In discussing probable cause in a scenario comparable to the facts at issue herein, the Third

Circuit further explained:

Although the police may have acted on the reasonable belief that they had probable cause to arrest Merkle, whether the School Defendants had probable cause to pursue Merkle's prosecution is an independent inquiry, the outcome of which is not dictated by our holding that Hahn had probable cause to arrest Merkle. Hahn acted only on what Principal Thomas told him. As instigators of the arrest, however, it is possible that the District and Brown were in possession of additional information, not provided to Detective Hahn, that would negate any probable cause they may otherwise have had to prosecute Merkle. Thus, in analyzing the common law claim of malicious prosecution, we must consider the facts known to the District and its superintendent to determine whether they had probable cause to prosecute.

*Merkle*, 211 F.3d at 794-95; *see also Gallo v. City of Philadelphia*, 161 F.3d 217, 220 n.2 (3d Cir.

1998), *as amended* (Dec. 7, 1998) ("Decisions have 'recognized that a § 1983 malicious

prosecution claim might be maintained against one who furnished false information to, or

concealed material information from, prosecuting authorities.'" (quoting 1A Martin A. Schwartz & John E. Kirklin, *Section 1983 Litigation*, § 3.20, at 316 (3d ed.1997))).

The Moving Defendants cite to the Commonwealth Court of Pennsylvania's decision in *Hess v. Lancaster County* for the following proposition:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not.
>
> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information.  In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

*Hess v. Lancaster Cnty.*, 514 A.2d 681, 683 (Pa. Cmwlth. 1986) (quoting Restatement (Second) of Torts § 653, comment g) (ellipsis omitted); *see also Stango v. Rodden*, No. CIV. A. 00-CV-5709, 2001 WL 1175131, at *4 (E.D. Pa. Aug. 21, 2001) ("Consequently, there was no misrepresentation or concealment on Defendant's part, and he cannot be held responsible for initiating the criminal proceeding against Plaintiff."); *Tomaskevitch v. Specialty Recs. Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998) ("Although spinning numerous theories, appellant proffer[]ed no evidence upon which a jury could have found that Specialty Records personnel knowingly provided false information, that they had any motive other than to bring a dishonest employee to justice, nor that pressure by Specialty Records was the determining factor in the decision to arrest." (footnote omitted)).

It bears noting that Plaintiff offers little in the way of argument in addressing the Moving Defendants' request that the malicious prosecution claims be dismissed, relying entirely on conclusory assertions that she has sufficiently alleged each of the elements of a malicious prosecution claim. The Moving Defendants argue that Plaintiff fails to allege that Mr. Pegg and the District initiated Plaintiff's criminal prosecution without probable cause because "Trooper Student was able to listen to Plaintiff's messages which constituted the complained of criminal misconduct himself and exercised his own discretion as to whether probable cause existed to support a harassment charge[,]" thus, in the Moving Defendants' estimation, making it "abundantly apparent on the face of the Complaint that none of the proceedings against Plaintiff were brought without probable cause." Br. in Supp. 17, ECF No. 27. It is true that the affidavit of probable cause attached to the Complaint provides that:

> [Mr. Pegg] played multiple voice mail recordings from [Plaintiff] where she referred to the Albert Gallatin School District as a Communist organization, accompanied with threats to see to it that all employees are required to forfeit their employment. Throughout the multiple messages were multiple explicit phrases that would be considered offensive and harassing in nature.

ECF No. 18-2 at 4. That said, the affidavit of probable cause also provides that Trooper Student had a conversation with Mr. Pegg wherein they discussed not only voicemails, but also other telephone calls. *See id.* (stating that Mr. Pegg reported that his office often repeatedly receives "lewd lascivious telephone calls *and* telephone messages" from Plaintiff (emphasis added)); *see also* Compl. ¶ 121 ("The 'Affidavit of Probable Cause' attached to Defendant Craig Student's Criminal Complaint is devoid of any specific dates of alleged telephone calls allegedly made by the Plaintiff to Defendant Christopher Pegg."); Reply 5, ECF No. 30 ("The Amended Complaint makes clear that Mr. Pegg's reports of Plaintiff's harassing telephone calls *and* voice messages to the District arose out of his duties as Superintendent." (emphasis added)).

26

Further, and importantly, Plaintiff alleges in her Complaint that Mr. Pegg made false representations to Trooper Student in an effort to initiate criminal charges against Plaintiff, that Mr. Pegg relied on a personal relationship with Trooper Student to improperly pressure him to initiate the criminal prosecution outside of normal PSP practices and procedures, that the charges would not have been filed in the absence of this relationship, and that the reason that Mr. Pegg did so was not to bring an individual to justice, but rather to retaliate against Plaintiff for statements she made respecting the District, its employees and officials, and its policies.  Compl. ¶¶ 65; 69-71; 73; 110; 118-22; 151; 159; 161; 174, ECF No. 18.  Where Plaintiff has alleged that Mr. Pegg knowingly provided false information to Trooper Student, that a personal relationship was the basis for the filing of the charges, and that Mr. Pegg possessed an improper motive, the Court cannot agree with the Moving Defendants at this juncture that it is clear from the face of the Complaint that the criminal charges were initiated by the Moving Defendants with probable cause. *See Yelland v. Abington Heights Sch. Dist.*, No. CV 3:16-2080, 2018 WL 3217643, at *12 (M.D. Pa. July 2, 2018) ("The jury must decide if exculpatory evidence was omitted by the defendants with respect to the plaintiff's malicious prosecution claim, and if the criminal charges against him were influenced by the defendants' investigation and report.").[5]

At the motion to dismiss stage, the Court must assume the veracity of Plaintiff's factual allegations.  Given the factually inherent nature of a probable cause determination, the Court believes that Defendant's argument asks the Court to assume too much at this early juncture about Trooper Student's actions and thought process, particularly in light of Plaintiff's allegations of Mr. Pegg's dishonesty and improper influence over the PSP.  This issue is more appropriately

---

[5] While the defendants in *Yelland* were alleged to have omitted information in reporting alleged criminal activity, clearly providing false information to law enforcement is another manner in which school officials can initiate a criminal proceeding without probable case.  *See Stango* 2001 WL 1175131, at *4.

addressed at the summary judgment stage, as evidenced by the case law cited by the Court herein and by the Moving Defendants in their briefing.  The Court will not dismiss either Count III or Count VI for failure to state a claim.

### 2.  Immunity as to Count VI

The Moving Defendants argue that Plaintiff technically brings her claim for malicious prosecution under Pennsylvania law against Mr. Pegg in only his official capacity, and that he is thus entitled to immunity with respect to Count VI.  Br. in Supp. 18, ECF No. 27.  In so arguing, they assert that the Complaint acknowledges that all of Mr. Pegg's alleged actions were taken in the course of his duties as the District's superintendent, and that Plaintiff's claims should thus be treated as claims against the municipal entity that employees him, i.e., the District.  *Id*.  They argue, that, because the District would be immune to Plaintiff's state law malicious prosecution, so too is Mr. Pegg to the extent he is sued in his official capacity.  *Id*.  The Moving Defendants further argue that, because Mr. Pegg is a high public official, he is entitled to invoke the doctrine of absolute immunity for high public officials pursuant to Pa.C.S.A. § 8546, and that he is thus immune to Plaintiff's state law malicious prosecution claim to the extent it is asserted against Mr. Pegg in his individual capacity.

The Moving Defendants are correct that, to the extent that Plaintiff's state law malicious prosecution claim is asserted against Mr. Pegg in his official capacity, Mr. Pegg is immune from suit.  "In a suit against a government official in his official capacity, 'the real party in interest . . . is the governmental entity and not the named official. . . .'"  *Smith v. Sch. Dist. of Philadelphia*, 112 F. Supp. 2d 417, 424–25 (E.D. Pa. 2000) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (U.S. 1991)).  "The Political Subdivision Tort Claims Act . . . grants to municipal agencies immunity from liability for all state law tort claims."  *Id*. at 424.  School districts, such as the District, are municipal

agencies. *Id.* at 425.  To the extent that Plaintiff's state law malicious prosecution claim is asserted against Mr. Pegg in his official capacity as superintendent for the District, it should be treated as a claim against the District.  Because Plaintiff's state law malicious prosecution claim against the District is barred, so too is her claim to the extent it is asserted against Mr. Pegg in his official capacity.  The Motion to Dismiss will be granted as to Plaintiff's state law claim for malicious prosecution to the extent the claim is asserted against Mr. Pegg in his official capacity.

To the extent that Plaintiff's state law claim for malicious prosecution is asserted against Mr. Pegg in his individual capacity, which the Complaint purports to do, the answer as to whether Mr. Pegg is immune is far less clear.  "Pennsylvania common law recognizes the doctrine of absolute immunity for 'high public officials.'"  *Smith*, 112 F. Supp. 2d at 425.  Further, "Pennsylvania courts have recognized that school superintendents qualify as high public officials for purposes of this common law doctrine." *Zugarek v. S. Tioga Sch. Dist.*, 214 F. Supp. 2d 468, 479 (M.D. Pa. 2002) (quoting *Smith*, 112 F.Supp.2d at 425).

With respect to the high public official absolute immunity doctrine, the Supreme Court of Pennsylvania has explained:

> Absolute privilege, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction . . . .

In [*Matson v. Margiotti*, 88 A.2d 892 (Pa. 1952),] the immunity of the Attorney General of Pennsylvania was at issue, and the rationale for applying the privilege *to law enforcement officials* was set forth as follows:

> Even though the innocent may sometimes suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to "immunize" public officials, for to permit slander, or libel, *or malicious prosecution suits*, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment-

> proof public officials from performing their official duties and would thus
> often hinder or obstruct justice and allow many criminals to go unpunished.

*Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001) (emphasis added) (quoting *Matson*, 88 A.2d at

895; 899-900); *see also Lindner v. Mollan*, 677 A.2d 1194, 1195 (Pa. 1996) ("The doctrine of

absolute privilege 'rests upon the . . . idea that conduct which otherwise would be actionable is to

escape liability because the defendant is acting in furtherance of some interest of social importance,

which is entitled to protection even at the expense of uncompensated harm to the plaintiff's

reputation.'  This sweeping immunity is 'not for the benefit of high public officials, but for the

benefit of the public.'" (quoting *Montgomery v. City of Philadelphia*, 140 A.2d 100, 102 (Pa.

1958); *Barto v. Felix*, 378 A.2d 927, 932 (Pa. Super. 1977))).

Under the allegations of Plaintiff's Complaint, it is clear that Mr. Pegg, as superintendent

of the District, is a high public official.  *Zugarek*, 214 F. Supp. 2d at 479.  The only issue that

remains to be resolved is whether the Court can, while taking all of Plaintiff's factual allegations

as true, definitively conclude that Mr. Pegg's alleged actions were taken in the course of his official

duties and within the scope of his authority.  The Court declines on this record to resolve that issue,

in favor of Mr. Pegg, at this juncture.

Initially, it bears noting that high public official immunity is an affirmative defense, and

Mr. Pegg thus bears the burden of establishing its applicability.  *Ferrone v. Onorato*, 439 F. Supp.

2d 442, 455 (W.D. Pa. 2006), *aff'd*, 298 F. App'x 190 (3d Cir. 2008).  While the doctrine of

absolute privilege for high public officials is broad, the Court harbors some concern as to Mr.

Pegg's argument that it should be applied at the motion to dismiss stage to a malicious prosecution

claim involving a criminal prosecution allegedly improperly initiated by school officials.  While

the Court would certainly understand the reasoning behind extending the doctrine to law

enforcement officials, attorney generals, district attorneys, and assistant district attorneys, each of

whose primary duties involve prosecuting individuals for alleged criminal activity, with respect to malicious prosecution allegations,[6] school district officials are not prosecutors.

Indeed, the Court would note that its independent research into cases involving high public official immunity and malicious prosecution claims mostly turned up cases involving law enforcement officials and prosecutors.  Moving Defendants certainly do not identify a case where a court applied high public official immunity to a malicious prosecution claim against a school official at the motion to dismiss stage.  The Court located at least one case where a court denied a motion for summary judgment in a similar scenario to that herein.  *See Yelland*, 2018 WL 3217643, at *15 (denying motion for summary judgment as to the issue of high public official immunity for malicious prosecution claim where school official's report provided to the DA's Office, which was used to determine if criminal charges should be filed against the plaintiff, allegedly omitted information); *see also Zurchin v. Ambridge Area Sch. Dist.*, 300 F. Supp. 3d 681, 695 (W.D. Pa. 2018) ("To this end, Plaintiff has alleged, inter alia, that Defendants maliciously and recklessly interfered with her contract by spreading false and unsubstantiated claims regarding her efficacy as superintendent.  Plaintiff's factual allegations as a whole, which the Court must accept as true at this stage of the proceedings, include Defendants' conduct as occurring outside the scope of activities that were in connection with school district business." (collecting cases)).  While Plaintiff alleges that Mr. Pegg has control over the District's school police force and charges of truancy, the Court finds that allegations that Mr. Pegg improperly influenced PSP to file a criminal charge of harassment are notably distinct.

---

[6] *Matson*, upon which Moving Defendants rely heavily, and *Durham* each dealt with law enforcement high public officials, not school officials.

Plaintiff alleges in her Complaint that Mr. Pegg made false representations to Trooper Student in an effort to initiate criminal charges against Plaintiff, that Mr. Pegg relied on a personal relationship with Trooper Student to improperly pressure him to initiate the criminal prosecution outside of normal PSP practices and procedures, that the charges would not have been filed in the absence of this relationship, and that the reason that Mr. Pegg did so was not to bring an individual to justice, but rather to retaliate against Plaintiff for statements she made respecting the District, its employees and officials, and its policies. On these allegations, the Court cannot conclude definitively on a motion to dismiss that Mr. Pegg is entitled to the absolute privilege. *See Yelland*, 2018 WL 3217643, at *15. In this Court's estimation, it remains an open question as to whether Mr. Pegg was operating within the scope of his official duties when he allegedly improperly initiated the criminal harassment charge against Plaintiff. This issue is more properly addressed at the summary judgment stage, where the Court can consider and evaluate evidence respecting Mr. Pegg's official duties and the scope of his authority as the District's superintendent. The Motion to Dismiss will be denied as to Plaintiff's state law claim for malicious prosecution to the extent the claim is asserted against Mr. Pegg in his individual capacity.

### C.  Punitive Damages and Attorneys' Fees

The Moving Defendants argue that Plaintiff's requests for punitive damages against the District and Mr. Pegg, to the extent he is sued in his official capacity, are improper, and that any such requests should be dismissed. Plaintiff has not responded to this argument. "[N]either municipalities nor defendants sued in their official capacities can be liable for punitive damages." *Judge v. Shikellamy Sch. Dist.*, 135 F. Supp. 3d 284, 299 (M.D. Pa. 2015), *aff'd*, 905 F.3d 122 (3d Cir. 2018). School districts are "municipal entities. *Id.* Accordingly, Plaintiff cannot pursue

punitive damages against the District or Mr. Pegg, to the extent he is sued in his official capacity, at Counts I and III.[7]

With respect to attorneys' fees, the Moving Defendants seek dismissal of any request for attorneys' fees for Plaintiff's state law claims.  While Moving Defendants advance argument as to Count III, the Court notes that Count III is brought under Section 1983, Compl. ¶ 155, ECF No. 18, and attorneys' fees are potentially recoverable for that claim, *see* 42 U.S.C. § 1988(b).  As to Count VI, Plaintiff's state law malicious prosecution claim, Plaintiff has provided no argument in response to Defendant's Motion to Dismiss, and cites 42 U.S.C. § 1988 in the Complaint as support for his request for attorneys' fees, Compl. 25, ECF No. 18.  While Section 1988(b) supports Plaintiff's request for attorneys' fees for his Section 1983 claims, he provides no argument or citation to authority as to why it supports recovery of attorneys' fees for a claim brought under Pennsylvania law.  "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482–83 (Pa. 2009).  Plaintiff has not identified a basis for recovery of attorneys' fees for his state law claim for malicious prosecution, and, accordingly, Plaintiff cannot seek attorneys' fees with respect to Count VI.  Any such request is dismissed.

## IV.     Conclusion

For the reasons discussed above, the Court will grant in part and deny in part the Motion to Dismiss.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

---

[7] Pursuant to this Memorandum Opinion, Count VI will be dismissed to the extent it was asserted against Mr. Pegg in his official capacity.

DATED: September 9, 2024

cc: All counsel of record