# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE M. PERKEY, | ) | |
| | ) | No. 2:23-cv-1326 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Robert J. Colville |
| | ) | |
| ALBERT GALLATIN SCHOOL DISTRICT, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court are Partial Motions to Dismiss filed by Defendants Albert Gallatin School District (the "District") and Christopher Pegg ("Mr. Pegg") (collectively, "School District Defendants") at ECF No. 60 and by Defendant Trooper Craig P. Student ("Trooper Student") at ECF No. 58. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331. Plaintiff Michelle M. Perkey has filed Responses (ECF Nos. 64 and 65) to each of the pending Partial Motions to Dismiss, and the deadline for replies has passed. Accordingly, the Partial Motions to Dismiss have been fully briefed and are ripe for disposition.

1

## I.    Factual Background & Procedural History

The Court has already issued a lengthy Memorandum Opinion (ECF No. 31) in this matter laying out the factual background in question.  The parties agree that the substantive factual allegations at issue in the operative Fourth Amended Complaint remain largely, if not entirely, unchanged from those set forth in the Second Amended Complaint, which the Court summarized in its prior Memorandum Opinion.  Accordingly, in the interest of efficiency, the Court will utilize that description verbatim herein, while omitting citations to specific paragraphs in the Second Amended Complaint in an effort to avoid confusion:

At all times relevant herein, Mr. Pegg was employed by the District as its superintendent. Plaintiff is the parent of two minor students who attended 8th and 9th grade in the District during the 2019-2020 school year.  On or about March 13, 2020, the District closed its schools in response to the COVID-19 pandemic and adopted a remote learning program involving students' use of District-issued computer tablets to attend classes remotely from home.

The District offered parents of students enrolled in the District access to two Facebook pages, an "Official" District page and a "Parents Page."  Plaintiff posted information on these pages that purportedly contradicted the CDC's policies and statements respecting the effectiveness of masks and lock downs with respect to COVID-19.  She further posted comments criticizing the District's remote learning and mask-wearing policies, as well as comments criticizing the District itself, its administrators and teachers, and Mr. Pegg.  Plaintiff also verbally communicated these criticisms.

During the timeframe that students were required to attend class remotely, Plaintiff experienced financial difficulties and was unable to afford an internet connection to enable her children to attend remote classes.  Because Plaintiff lives in a rural area, the available internet

service was not reliable.  Plaintiff learned that the District provided free internet service to other students to facilitate access to the remote learning program.  Plaintiff contacted the District to request free internet service, but the District refused her request.

During the 2020-2021 school year, Plaintiffs' children's teachers emailed Plaintiff to inform her that her children were not completing their assigned work and that they were receiving failing grades.  Following these communications, Plaintiff "became very critical of the fact that the schools [were] operating remotely."  In responding to the teachers' emails, Plaintiff expressed frustration and further criticized the District's remote learning program.

When the District's schools reopened, students were required to wear protective masks during the school day.  At that time, Plaintiff elected to have her children complete the 2020-2021 school year via the remote learning program as opposed to in-person.  Each of Plaintiff's two children failed the 2020-2021 school year.

Plaintiff subsequently posted a comment to the District's Parents Facebook page criticizing the District's administrators and policies, as well as a video containing a "medical argument relative to [COVID-19] and ineffectiveness of requiring masks for students."  Almost immediately, Plaintiff's post was removed, and she was blocked from accessing both the District's Parent and Official Facebook pages by the pages' administrators.  Given that she was blocked from both pages simultaneously, Plaintiff asserts that the administrators acted in concert.  As of the date the Complaint was filed, Plaintiff's access to the Facebook pages had not been restored. Mr. Pegg directed the pages' administrators to block Plaintiff's access and to not restore her access, or alternatively, condoned the administrators' actions.  Plaintiff contacted the Facebook page administrators, but did not receive a response.

After being blocked from accessing the District's Facebook pages, Plaintiff continued to "raise questions" about the District's mask requirement. She also "raised questions" on social media regarding funds paid to the District by the federal government.

The District maintains a police force known as the Albert Gallatin School Police, comprised of retired state police officers and retired municipal police officers. In his role as superintendent, Mr. Pegg directs the School Police, including by directing school police officers to make arrests and file charges either personally or through other District administrators, particularly in cases of truancy. Where parents whose children's absences exceeded the legally acceptable number of school days, the District's previous practice involved the District's attendance officer, at the direction of Mr. Pegg, directing school police officers to file charges of truancy against the parents. Due to rising absences during the pandemic, this practice was modified, and truancy charges were brought only against parents whose children had "excessive school absences." At the hearings arising out of these pandemic-related truancy cases, the District attendance officer would appear and withdraw the charges or request that the truancy charges be dismissed.

On or before May 26, 2021, Mr. Pegg contacted the Pennsylvania State Police ("PSP"), and specifically Trooper Craig P. Student ("Trooper Student") and Trooper John Doe, to make complaints about Plaintiff. On May 26, 2021, Trooper Student and Trooper John Doe traveled to Plaintiff's home and falsely informed Plaintiff that there was an outstanding warrant for Plaintiff's arrest for charges of truancy. While Plaintiff had been charged with truancy, the truancy charges pending at that time were filed by the District's school police, and not the PSP. The troopers did not produce a warrant during the May 26, 2021 encounter, and Plaintiff avers that the troopers did not actually possess a warrant.

The troopers' visit to Plaintiff's home was seemingly also related to voicemail recordings Plaintiff left for the District on or before May 26, 2021 referring to District staff as "communists" and threatening to "have their jobs." Mr. Pegg reported the voicemails to Trooper Student, and involved the PSP in this situation due to Plaintiff's prior complaints about the District, its policies, and its employees/officials. Trooper Student visited Plaintiff's house because Trooper Student and Mr. Pegg maintained an "interpersonal relationship." Plaintiff was not arrested on May 26, 2021, and the PSP did not file charges against Plaintiff until July 26, 2021, when Plaintiff was charged with misdemeanor harassment related to the voicemails that Plaintiff had left for the District.

On June 16, 2021, Plaintiff appeared before the local District Justice on her truancy charges, where the truancy/attendance officer appeared and dropped Plaintiff's truancy charges. Due to her children's failing grades, Plaintiff made arrangements with the school nurse for the children to attend summer school without a mask requirement. Despite the nurse's approval and the lifting of state-wide mask mandates, the children were required to wear masks. Plaintiff asserts that her children were required to wear masks because of her prior criticism of the District. Plaintiff subsequently contacted the District by telephone to complain about the District's mask requirement. The District did not return Plaintiff's calls.

On June 21, 2021, Plaintiff visited the District's high school to discuss her children's failure of the 2020-2021 school year. District staff were not wearing masks when Plaintiff entered the building, but staff in the school's office donned masks upon observing Plaintiff. Plaintiff met with the principal, the guidance counselor, and a teacher in a conference room, and the principal and teacher quickly scolded Plaintiff for her failure to wear a mask, with the teacher citing personal

offense to Plaintiff's failure to wear a mask.  During the meeting, Plaintiff confronted the District officials regarding their failure to return her phone calls.

In response to Plaintiff's prior criticisms and her visit to the school on June 21, 2021, Mr. Pegg sent a letter to Plaintiff dated June 21, 2021 instructing Plaintiff that, "in order to be on district property, you must schedule an appointment in advance with the appropriate administrator or school counselor."  This restriction has not been lifted to date.

As noted, after the District failed to answer or return Plaintiff's calls, Plaintiff left the District voicemail recordings on or before May 26, 2021 referring to the staff as "communists" and threatening to "have their jobs."  On July 26, 2021, i.e., two months after his visit to Plaintiff's home, Trooper Student, at the direction of Mr. Pegg and based upon their personal relationship, filed a criminal complaint against Plaintiff charging Plaintiff with one misdemeanor count of "HARASSMENT – COMM-LEWD, THREATENING, ETC. LANGUAGE" related to the voicemails.  Mr. Pegg testified against Plaintiff at an April 25, 2022 Preliminary Hearing related to this charge, but no audio tapes of the purportedly harassing-in-nature voicemails were introduced.  Plaintiff believes and avers that the content of the audio recordings at issue would reveal that the voicemails did not rise to the level of criminal harassment.

Following the preliminary hearing, the Court of Common Pleas of Fayette County found that the Commonwealth had presented a prima facie case, and held the case for court.  When faced with the prospect of producing the audio recordings to a judge and jury, Mr. Pegg informed the Fayette County District Attorney that he no longer wished to pursue criminal charges against Plaintiff.  The harassment charge was nolle prossed and dismissed on September 21, 2022 because "the victim [did] not wish to proceed."  Plaintiff believes that her prior criticisms were the motivation for the filing of the harassment charge against her, and that all Defendants participated

in a conspiracy and acted in concert with respect to the filing and pursuit of the harassment charge. Plaintiff has withdrawn her children from the District.

With respect to relevant procedural history, Plaintiff filed the operative Fourth Amended Complaint (the "Complaint") on March 19, 2025. The four remaining defendants include the Defendants who have filed the motions at issue herein and a Defendant identified as "Trooper John Doe." Plaintiff asserts eight claims that are accurately summarized by the School District Defendants as follows:

> Count I – First Amendment Retaliation (all Defendants); Count II – Violation of the Fourth Amendment [Unlawful Arrest] (Defendants Craig P. Student and Trooper John Doe); Count III – Violation of Fourth Amendment/Violation of Pennsylvania Common Law Rights/Malicious Prosecution (Albert Gallatin School District, Christopher Pegg, Trooper Craig P. Student, and Trooper John Doe); Count IV – Violation of Fourth Amendment /Reckless Investigation (Trooper Craig P. Student and Trooper John Doe); Count V – Violation of Fourth Amendment/Unlawful Search and Seizure (Trooper Craig P. Student and Trooper John Doe); Count VI – State Law Claim Malicious Prosecution (Christopher Pegg, [in his individual capacity,] Trooper Craig P. Student, and Trooper John Doe); Count VII – State Law Claim Intentional Infliction of Emotional Distress (Trooper Craig P. Student and Trooper John Doe); and Count VIII ([which is incorrectly] labeled as "Count X" [in the Complaint]) – State Law Claim False Arrest / False Imprisonment (Trooper Craig P. Student and Trooper John Doe).

ECF No. 60 at ¶ 19.[1]

Trooper Student moves to dismiss the following claims to the extent they are set forth against him: Counts II, III, IV, VI, VII, and VIII. He first argues that Plaintiff fails to state a claim under the Fourth Amendment for malicious prosecution or unlawful arrest. ECF No. 58 at ¶¶16-17. Trooper Student further argues that Plaintiff's state law claims for malicious prosecution, intentional infliction of emotional distress, and false arrest/false imprisonment are barred by sovereign immunity, or that Plaintiff otherwise fails to plead facts sufficient to sustain such a claim. *Id.* at ¶18. He further asserts that Plaintiff's claims against Trooper Student in his official capacity

---

[1] "Count X" will be referred to as Count VIII herein.

should be dismissed because he is entitled to Eleventh Amendment Immunity as to any such claim. Finally, he asserts that he is entitled to qualified immunity with respect to Plaintiff's reckless investigation claim. *Id.* at ¶ 19.

In response to Trooper Student's Motion, Plaintiff has sought to withdraw her claims at Count II (in its entirety), Count III (Fourth Amendment claim for malicious prosecution only), Count IV (in its entirety), Count VII (in its entirety), and Count VIII (in its entirety). Trooper Student did not file a reply opposing such relief. Accordingly, Plaintiff's claims at Count II (in its entirety), Count III (Fourth Amendment claim for malicious prosecution only), Count IV (in its entirety), Count VII (in its entirety), and Count VIII (in its entirety) are deemed withdrawn, and the Court will not address substantive arguments respecting those Counts herein. The Court notes that, following this withdrawal of claims, the claims that remain at issue in Trooper Student's Partial Motion to Dismiss are Count III (PA common law malicious prosecution claim) and Count VI (PA state law malicious prosecution claim).[2]

The School District Defendants seek dismissal of Plaintiff's Fourth Amendment claim for malicious prosecution at Count III to the extent that it is asserted against them, arguing that Plaintiff fails to state a claim. ECF No. 60 at ¶ 21. Plaintiff has also agreed to withdraw her Fourth Amendment claim for malicious prosecution against the School District Defendants, and asks that the Court dismiss the Partial Motion to Dismiss as moot in light of the same. The School District Defendants did not file a reply opposing such relief. Accordingly, Plaintiff's claim against the

---

[2] Now that all claims of Fourth Amendment malicious prosecution (which requires the establishment of an additional element) have been withdrawn, it appears to this Court that Count III, to the extent it relies on the common law, and Count VI, which cites to Pennsylvania state law, are largely, if not entirely, duplicative of one another. To date, the parties have seemingly addressed those claims in tandem or interchangeably, and no party has sought to materially distinguish them as of this juncture (again, outside of the fact that Count III originally involved alleged violations of Defendant's rights under the Fourth Amendment). At the summary judgment stage, it may be in the interest of "cleaning up the pleadings" to address what, if any, distinction the parties perceive remains as to Counts III and VI.

School District Defendants for malicious prosecution under the Fourth Amendment is deemed withdrawn, and the School District Defendants' Motion to Dismiss will be dismissed as moot.

## II.    Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

9

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

"If a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed" in a civil rights case, a court must permit amendment unless amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This is also true where a plaintiff does not request leave to amend. *See Grayson*, 293 F.3d at 108 ("When a plaintiff does not seek leave to amend a deficient complaint after a

10

defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile.").

## III.    Discussion

### A. Eleventh Amendment Immunity

Student Trooper argues that Plaintiff's claims against him should be dismissed to the extent that they are asserted against him in his official capacity because he is entitled to Eleventh Amendment Immunity as to any such claim. The Eleventh Amendment to the United States Constitution precludes private individuals from bringing suit against a state in federal court. *Parrish v. Muldrow*, No. 1:24-CV-00670, 2025 WL 2633212, at *5 (M.D. Pa. July 24, 2025). "A claim against a defendant who is a state official, being sued in their official capacity for monetary damages, is barred by the Eleventh Amendment." *Parrish*, 2025 WL 2633212, at *5 (citing *Hafer v. Melo*, 502 U.S. 21, 27, 112 S. Ct. 358, 362, 116 L. Ed. 2d 301 (1991)). The Pennsylvania State Police is a state agency, and PSP troopers such as Trooper Student are state officials. *Garcia v. Wind Creek Bethlehem, LLC*, No. 5:22-CV-00292, 2022 WL 4130754, at *11 (E.D. Pa. Sept. 12, 2022). Eleventh Amendment immunity applies to both state and federal law claims. *Clemente v. Dep't of Transportation*, No. 2:25-CV-414, 2025 WL 1371378, at *3 (W.D. Pa. May 12, 2025).

"There are three narrow exceptions to [Eleventh Amendment] sovereign immunity: (1) abrogation by an Act of Congress; (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation." *Luck v. Mount Airy No. 1, LLC*, 901 F. Supp. 2d 547, 558 (M.D. Pa. 2012) (citing *M.A. ex rel. E.S. v. State–Operated Sch. Dist.*, 344 F.3d 335, 344–45 (3d Cir. 2003)). None of those exceptions applies here, and Plaintiff does not advance argument that they do, instead only providing argument that sovereign immunity does not apply *under Pennsylvania law*. *See Garcia*, 2022 WL 4130754, at

\*11 ("To support this argument, Garcia discusses sovereign immunity, which has no bearing on the Eleventh Amendment analysis regarding the federal claims.").  The Court will address that issue later herein, but holds that, under the Eleventh Amendment, Plaintiff cannot maintain suit in federal court against Trooper Student in his official capacity.  Plaintiff's "official capacity" claims against Trooper Student will be dismissed with prejudice.

### B.  Whether Plaintiff States a Claim for Malicious Prosecution

Trooper Student also moves for dismissal on the basis that Plaintiff fails to state a claim. In arguing that Plaintiff fails to state a claim, Trooper Student focuses first, and primarily, on whether Plaintiff pled facts sufficient to support a Fourth Amendment malicious prosecution claim. As noted, that claim has been withdrawn, as Plaintiff concedes that she did not plead a necessary element to support that claim, a deprivation of liberty.  To succeed on a claim for malicious prosecution under Section 1983, a plaintiff must establish the following:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and *(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.*

*Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (citing *Donahue v. Gavin*, 280 F.3d 371, 379-80 (3d Cir. 2002) (emphasis added)).  That said, in Pennsylvania, a plaintiff alleging common law malicious prosecution must establish only the first four elements listed above. *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000); *see also Henderson v. City of Philadelphia*, 853 F. Supp. 2d 514, 518 (E.D. Pa. 2012).  Accordingly, Trooper Student's arguments respecting Plaintiff's withdrawn Fourth Amendment claim, with the exception of those relating to a failure to plead a deprivation of liberty, are equally applicable to Plaintiff's state law claim for malicious prosecution against Trooper Student.

In seeking dismissal, Trooper Student focuses on the third and fourth elements of a malicious prosecution claim, arguing that Plaintiff has not pled facts sufficient to support a finding that Trooper Student initiated criminal proceedings against Plaintiff without probable cause or that Trooper Student acted maliciously.  With respect to probable cause in the context of a Section 1983 case generally, the Third Circuit has explained:

> "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir.1995). Generally, "the question of probable cause in a section 1983 damage suit is one for the jury." *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir.1998); *see also Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir.1997); *Deary v. Three Un–Named Police Officers*, 746 F.2d 185, 190–92 (3d Cir.1984).  This is particularly true where the probable cause determination rests on credibility conflicts.  *See Sharrar*, 128 F.3d at 818; *Deary*, 746 F.2d at 192.  However, a district court may conclude "that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding," and may enter summary judgment accordingly.  *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir.1997).

*Merkle*, 211 F.3d at 788–89.  "Malice may be inferred from the absence of probable cause." *Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Loc. Union 249*, 544 A.2d 940, 941 (Pa. 1988).

As to the probable cause element, the Court initially notes that, despite Trooper Student's assertions to the contrary, the finding of a prima facie case by a judge at a preliminary hearing in a criminal matter is neither determinative nor dispositive as to whether probable cause, in fact, existed for purposes of a later malicious prosecution lawsuit, particularly at this early stage.  *See Zimmerman v. Corbett*, No. 1:13-CV-02788, 2015 WL 539783, at *5 (M.D. Pa. Feb. 10, 2015) ("Thus, although the prior probable cause determinations cited by Defendants—at a preliminary hearing, and upon his motion to quash—are very strong evidence in favor of a finding of probable cause, the Court finds that they are not determinative at this stage.  The amended complaint alleges

13

that Plaintiff's criminal proceeding was initiated without probable cause, and the Court cannot

determine at this time that no probable cause existed as a matter of law.").

The Court discussed the issue of probable cause at some length in its prior Memorandum

Opinion. While that Memorandum Opinion dealt with a motion filed by the School District

Defendants, and not Trooper Student, the Court discussed facts relevant to Trooper Student's role

in the initiation of the criminal proceedings at issue as follows:

> The Moving Defendants argue that Plaintiff fails to allege that Mr. Pegg and the
> District initiated Plaintiff's criminal prosecution without probable cause because
> "Trooper Student was able to listen to Plaintiff's messages which constituted the
> complained of criminal misconduct himself and exercised his own discretion as to
> whether probable cause existed to support a harassment charge[,]" thus, in the
> Moving Defendants' estimation, making it "abundantly apparent on the face of the
> Complaint that none of the proceedings against Plaintiff were brought without
> probable cause." Br. in Supp. 17, ECF No. 27. It is true that the affidavit of
> probable cause attached to the Complaint provides that:
>
>> [Mr. Pegg] played multiple voice mail recordings from [Plaintiff]
>> where she referred to the Albert Gallatin School District as a
>> Communist organization, accompanied with threats to see to it that
>> all employees are required to forfeit their employment. Throughout
>> the multiple messages were multiple explicit phrases that would be
>> considered offensive and harassing in nature.
>
> ECF No. 18-2 at 4. That said, the affidavit of probable cause also provides that
> Trooper Student had a conversation with Mr. Pegg wherein they discussed not only
> voicemails, but also other telephone calls. *See id.* (stating that Mr. Pegg reported
> that his office often repeatedly receives "lewd lascivious telephone calls *and*
> telephone messages" from Plaintiff (emphasis added)); *see also* Compl. ¶ 121 ("The
> 'Affidavit of Probable Cause' attached to Defendant Craig Student's Criminal
> Complaint is devoid of any specific dates of alleged telephone calls allegedly made
> by the Plaintiff to Defendant Christopher Pegg."); Reply 5, ECF No. 30 ("The
> Amended Complaint makes clear that Mr. Pegg's reports of Plaintiff's harassing
> telephone calls *and* voice messages to the District arose out of his duties as
> Superintendent." (emphasis added)).
>
> Further, and importantly, Plaintiff alleges in her Complaint that Mr. Pegg
> made false representations to Trooper Student in an effort to initiate criminal
> charges against Plaintiff, that Mr. Pegg relied on a personal relationship with
> Trooper Student to improperly pressure him to initiate the criminal prosecution
> outside of normal PSP practices and procedures, that the charges would not have

14

been filed in the absence of this relationship, and that the reason that Mr. Pegg did so was not to bring an individual to justice, but rather to retaliate against Plaintiff for statements she made respecting the District, its employees and officials, and its policies.  Compl. ¶¶ 65; 69-71; 73; 110; 118-22; 151; 159; 161; 174, ECF No. 18. Where Plaintiff has alleged that Mr. Pegg knowingly provided false information to Trooper Student, that a personal relationship was the basis for the filing of the charges, and that Mr. Pegg possessed an improper motive, the Court cannot agree with the Moving Defendants at this juncture that it is clear from the face of the Complaint that the criminal charges were initiated by the Moving Defendants with probable cause.  *See Yelland v. Abington Heights Sch. Dist.*, No. CV 3:16-2080, 2018 WL 3217643, at \*12 (M.D. Pa. July 2, 2018) ("The jury must decide if exculpatory evidence was omitted by the defendants with respect to the plaintiff's malicious prosecution claim, and if the criminal charges against him were influenced by the defendants' investigation and report.").

At the motion to dismiss stage, the Court must assume the veracity of Plaintiff's factual allegations.  Given the factually inherent nature of a probable cause determination, the Court believes that Defendant's argument asks the Court to assume too much at this early juncture about Trooper Student's actions and thought process, particularly in light of Plaintiff's allegations of Mr. Pegg's dishonesty and improper influence over the PSP.  This issue is more appropriately addressed at the summary judgment stage, as evidenced by the case law cited by the Court herein and by the Moving Defendants in their briefing.  The Court will not dismiss either Count III or Count VI for failure to state a claim.

ECF No. 31 at 26-28 (footnote omitted).

As to both the probable cause and malice elements, Plaintiff also alleges that the May 26, 2021 interaction between Trooper Student and Plaintiff, i.e., when Trooper Student traveled to Plaintiff's home and allegedly falsely claimed to be in possession of a search warrant for truancy charges that had been filed by school district police (as opposed to the PSP), involved: Trooper Student violently opening a door into Plaintiff's leg; Trooper Student illegally entering Plaintiff's home; Plaintiff calling 911 to report Trooper Student's conduct; and Trooper Student interfering with Plaintiff's 911 call.  ECF No. 57 at ¶¶ 71-81.  Trooper Student did not file harassment charges until July 26, 2021, i.e., two months after his visit to Plaintiff's home, and, according to Plaintiff, only at the direction of Mr. Pegg based upon their personal relationship.  Plaintiff further asserts that Trooper Student did not conduct an adequate investigation and that he intentionally concealed

15

exculpatory evidence during the preliminary hearing. These facts, if proven, could support a finding that Trooper Student initiated the criminal proceedings without probable cause and that he acted with an improper, malicious motive and for a purpose other than bringing the Plaintiff to justice.

The Court finds that that it is not clear from the face of the Complaint that Plaintiff cannot establish the third and fourth elements of a malicious prosecution claim. Given the factually inherent nature of these elements, which call into question Trooper Student's knowledge and motives, the Court again believes that these issues are more appropriately addressed at the summary judgment stage, and the Court will deny Trooper Student's Partial Motion to Dismiss to the extent it asserts that Plaintiff fails to state a claim for malicious prosecution under Pennsylvania law.

### C. Sovereign Immunity

Trooper Student also argues that he is entitled to sovereign immunity with respect to the Plaintiff's claim for malicious prosecution under Pennsylvania state law at Count VI. "Sovereign immunity bars claims that are asserted against the Commonwealth, its agencies, and Commonwealth employees acting within the scope of their office or employment." *Mitchell v. Luckenbill*, 680 F. Supp. 2d 672, 681–82 (M.D. Pa. 2010) (citing 1 Pa. Const. Stat. Ann. § 2310)). Sovereign immunity is implicated even where a Commonwealth defendant is sued in their individual capacity, and it applies to both intentional and negligent torts. *Id.* at 682. An action falls within the scope of employment if it:

> (1) is the kind that the employee is employed to perform; (2) occurs substantially within the job's authorized time and space limits; (3) is motivated at least in part by a desire to serve the employer; and (4) if force was used by the employee against another, the use of force is not unexpectable by the employer.

16

*Id.* "While properly investigating complaints made to the police department would fall within the scope of [an officer's] employment, the same cannot be said for conducting a purposefully flawed investigation." *Perkins v. Staskiewicz*, No. CIVA 1:CV-08-1651, 2009 WL 693176, at *4 (M.D. Pa. Mar. 13, 2009)

Trooper Student asserts, in a rather conclusory manner, that the allegations in the Complaint establish that he was acting within the scope of his employment at all times. Again, this issue is one that is much more appropriate for consideration following the development of an evidentiary record. The facts discussed above with respect to malice and probable cause, taken as true and viewed in a light most favorable to Plaintiff, could support a finding that Trooper Student was not motivated by a desire to serve his employer or to conduct acts incidental to his employer's business, but rather by a personal relationship with Mr. Pegg and/or personal animus towards Plaintiff. In light of the same, the Court finds that Trooper Student has not established that he is entitled to sovereign immunity at this juncture.

## IV.    Conclusion

For the reasons discussed above, the Court will dismiss the School District Defendants' Partial Motion to Dismiss and will grant in part, deny in part, and dismiss in part Trooper Student's Partial Motion to Dismiss. An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 30, 2026

cc: All counsel of record

17